[No. D033824. Fourth Dist., Div. One. June 27, 2000.]

CRAIG BELL, Plaintiff and Respondent, v.
VISTA UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

 .

**COUNSEL**

Stutz, Gallagher, Artiano, Shinoff & Holtz, Daniel R. Shinoff, Jack M. Sleeth, Jr., and Paul V. Carelli IV for Defendants and Appellants.

Robert P. Ottilie for Plaintiff and Respondent.

**OPINION**

**WORK, Acting P. J.**—Vista Unified School District, Rancho Buena Vista High School (RBV) Principal Alan Johnson, RBV Athletic Director Ric

Bethel, and associate superintendent Peter McHugh (collectively VUSD) appeal a judgment mandating it to nullify its termination of RBV football coach Craig Bell, because of a notice violation of the Ralph M. Brown Act (Gov. Code, § 54950 et seq.;[1] the Brown Act), and awarding him $157,674 in attorney fees and costs. VUSD contends the trial court erred in concluding that a meeting to discipline an employee after an adverse finding or decision by a separate administrative body constitutes a "complaint or charge" under the Brown Act, specifically section 54957, requiring 24 hours written notice of the meeting. VUSD also asserts the trial court abused its discretion when it acted before the expiration of the statutory 30-day period to "cure or correct" the Brown Act violation under section 54960.1 and by awarding attorney fees and costs unrelated to it. As we shall explain, we conclude VUSD violated the written notice requirement of section 54957 and that section 54960.1 does not provide a procedural impediment here. However, we conclude the trial court abused its discretion in failing to apportion the section 54960.5 attorney fees and costs request. Accordingly, we reverse the judgment as to the attorney fees and costs award and remand it to the trial court for recalculation following reasonable apportionment consistent with this opinion. In all other respects, we affirm the judgment.

## Factual and Procedural Background

By the fall 1997, Bell had been a VUSD employee for 13 years and the only football coach in RBV's 11-year history. As a tenured instructor, his coaching assignment was separate and renewed annually each fiscal year. That assignment had been renewed on July 1, 1997, and was to expire on June 30, 1998.

In the spring 1997, Robert Ryan, the father of Australian high school student John, asked Bell to help arrange his son's transfer to Vista to attend school and play American football. Bell advised Ryan he had a "no cut" policy, but any decision regarding eligibility would be made by the California Interscholastic Federation (CIF), a voluntary association which governs eligibility for interscholastic competition. Bell immediately reported Ryan's telephone call to athletic director Bethel and directed Ryan to the counseling office for processing the transfer. Ryan later asked Bell to obtain a visa for John to enter the United States, an Immigration and Naturalization Service (INS) form I-20. In turn, Bell contacted Bethel and VUSD Associate Superintendent Peter McHugh who told him VUSD did not provide the form; made inquiries on Bell's behalf; and later advised him where he could obtain it. A third party obtained the form and Bell had a Vista counselor, Frank Donez, sign it. Bell's assistant coach offered to take John into his home for the year at a minimal cost.

[1] All statutory references are to the Government Code unless otherwise specified.

After John's arrival and registration, RBV Principal Johnson wrote the CIF requesting his athletic eligibility. CIF Commissioner Jan Jessop met with John. Upon learning his age, his prior education and Bell's involvement in his transfer, on September 9 Jessop denied the request for eligibility on the grounds he was a "fifth year" senior and a transfer student. On October 2, she further ruled Bell had violated CIF's undue influence rule, John was ineligible for one year, and RBV was placed on one-year athletic probation with the suggestion VUSD consider disciplinary action against involved employees.

John appealed the decision to the CIF Appellate Panel, which following hearings on October 13, upheld the undue influence ruling, but reduced his ineligibility to 13 days. The panel placed the school's entire athletic program on probation for one year, suspended its membership in the CIF for the year, and ordered VUSD to review the matter and take whatever action it deemed appropriate regarding Bell. On October 16, the VUSD Board of Trustees (the Board) held a special closed session Board meeting to consider action to take in response to the CIF probation. It posted public notice describing the subjects to be considered at the meeting, including "public employee discipline/dismissal/release." Although it is undisputed that VUSD did not give Bell 24 hours' notice of the meeting, he received written notice late that morning of the meeting, specifically advising him the Board would discuss the issue of RBV's placement on probation for violating CIF rule 510[2] and requesting his availability (outside of the closed session) as a potential resource if the Board had any questions. On his attorney's advice after discussing the matter with VUSD counsel, Bell did not attend. Bell was not advised either in writing or orally that the Board intended to consider any personnel action against him at the meeting. The Board voted to permanently remove Bell from his "additional assignment" as football coach, without loss of pay. He was not removed from his tenured teaching position. Johnson advised him of the Board's action the following morning orally and later that afternoon in writing.

---

[2]CIF rule 510 provides: "A. The use of undue influence by any person or persons to secure or retain a student or to secure or retain one or both parents or guardians of a student as residents may cause the student to be ineligible for high school athletics for a period of one year and shall jeopardize the standing of the high school in the California Interscholastic Federation. [¶] NOTE: Undue influence is any act, gesture or communication (including accepting material or financial inducement to attend a CIF member school for the purpose of engaging in CIF competition regardless of the source) . . . which may be objectively seen as an inducement, or part of a process of inducing a student, or his or her parent or guardian, by or on behalf of, a member school, to enroll in, transfer to, or remain in, a particular school for athletic purposes. [¶] B. A student shall become ineligible for CIF competition in their respective sport and shall be penalized according to Bylaw 400 for accepting material or financial inducement to attend a CIF member school for the purpose of engaging in CIF competition, regardless of the source."

On October 23, pursuant to section 54960.1, subdivision (b), Bell notified VUSD it had violated the Brown Act and requested it to cure or correct the violation. Later that same day, Bell filed his complaint for mandamus, injunctive relief and damages. That evening, the Board considered Bell's request to cure, but reported in open session it had voted to initiate an investigation into the "undue influence" issues. On October 24, the trial court issued a temporary restraining order (TRO) staying Bell's termination as head football coach. The parties entered into a written stipulation extending the TRO until the trial. The first amended petition and complaint contained 15 causes of action; however, only four related to Brown Act claims, seeking injunctive relief, an alternative writ of mandate, a peremptory writ of mandate, and declaratory relief. The remaining 11 claims, tried separately, asked for tort damages based on various actions such as wrongful termination (retaliatory firing), intentional infliction of emotional distress, and defamation.

By telephonic ruling on June 17, 1998, the trial court concluded CIF Commissioner Jessop's letter dated October 2, 1997, to Johnson constituted a "charge or complaint" against Bell, requiring 24-hour notice to him under section 54957. That letter contained Jessop's opinion Bell had committed undue influence and her recommendation that VUSD review and take whatever personnel actions it deemed appropriate against Bell and others. Johnson notified Bell of the October 16, 1997 meeting where the Board would consider RBV's placement on probation for violating CIF rule 510. The notice, however, was silent regarding a closed session to consider Bell's discipline or dismissal. Consequently, the trial court ruled that because such notice was not given, the action taken at the board meeting was null and void pursuant to section 54957. The court further found VUSD neither cured nor corrected its failure to provide Bell notice of a meeting to discuss his termination as football coach or his right to request an open meeting. The court then ruled that pursuant to section 54960.1, subdivision (a), mandamus was a proper remedy to declare the action taken at the October 16 meeting was null and void. The court directed VUSD to nullify its prior decision terminating Bell as RBV head football coach, remove any mention of termination from his personnel file, not communicate in the future he was ever terminated, and permanently enjoined VUSD, its agents and employees from attempting to enforce the October 16 termination decision. Finally, the court concluded that Bell had timely requested VUSD to cure or correct the statutorily deficient notice and that his filing suit before the expiration of the 30-day period to correct a Brown Act violation was not prejudicial and did not bar his mandamus action. The court ruled Bell was entitled to reasonable attorney fees and costs under section 54960.5, subject to a cost memorandum and motion for attorney fees. The matter was then heard on June 19, after

which the court took the matter under submission and confirmed its telephonic ruling with slight modification. Judgment was filed on August 14, incorporating an award for attorney fees and costs in the sum of $157,674.81 (costs of $9,812.81 and fees of $147,862). VUSD appealed, but the appeal was dismissed without prejudice for violating the one final judgment rule. The remaining tort actions went to trial in March 1999, but the parties resolved them before its completion. VUSD paid Bell $125,000 and gave him a paid leave of absence during the second semester of the 1999/2000 school year to settle his remaining claims. VUSD then timely noticed this appeal on June 22.

### The Brown Act Was Violated

VUSD contends the closed meeting did not violate the Brown Act because Bell was only entitled to a 24-hour written notice of the meeting under section 54957 if the Board intended to consider complaints or charges brought against him by another person or employee. Here, VUSD asserts the Board did not do so, but rather it met to consider whether to discipline an employee after an adverse finding or decision by a separate administrative body (CIF) and that action did not constitute a complaint or charge under the Brown Act. Bell responds that when Superintendent Gary Olson and McHugh, who also served as CIF board chair, presented the CIF's finding of undue influence as a basis for disciplining Bell to the Board it evolved into a charge or complaint presented by a fellow employee or another person, requiring notice of the meeting under section 54957. As we shall explain, we agree.

The Brown Act's requirement that public meetings be open ensures the public's right to attend meetings of local legislative bodies, subject to statutory exceptions. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 825 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 95 [82 Cal.Rptr.2d 452].) It established the governing mandate that "meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953, subd. (a).) The Brown Act was designed to facilitate public participation in local governmental decisions and to curb misuse of the democratic process by secret legislation. (*Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1116 [83 Cal.Rptr.2d 164]; *Fischer v. Los Angeles Unified School Dist., supra,* 70 Cal.App.4th at p. 95.)

Because VUSD's Board is a "legislative body" of a "local agency" subject to the Brown Act (§§ 54951, 54952), it must conduct its meetings in open session unless a statutory exception authorizes a closed or executive session (§ 54962; *Fischer v. Los Angeles Unified School Dist.*, *supra*, 70 Cal.App.4th at p. 95). The Brown Act provides for a "personnel exception" in section 54957, allowing closed sessions when the governmental entity is "meeting to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee or to hear complaints or charges brought against the employee by another person or employee unless the employee requests a public session." That section further provides: "As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void." (§ 54957.) "[T]he underlying purposes of the 'personnel exception' are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body. [Citations.] [¶] [W]e must construe [it] narrowly and the 'sunshine law' liberally in favor of openness [citation]. . . ." (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 955 [196 Cal.Rptr. 45]; *Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568, 573 [84 Cal.Rptr.2d 27].)

Section 54957 has been interpreted to allow an employee to request a public hearing only where "complaints or charges" are involved. (*Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 881 [80 Cal.Rptr.2d 589]; *Fischer v. Los Angeles Unified School Dist.*, *supra*, 70 Cal.App.4th at p. 96.) ■ The notice requirement in the second paragraph of section 54957 supports this construction as it requires notice as a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee. (*Furtado v. Sierra Community College*, *supra*, 68 Cal.App.4th at pp. 881-882; *Fischer v. Los Angeles Unified School Dist.*, *supra*, 70 Cal.App.4th at p. 97.) ■ Consequently, the Legislature has drawn a reasonable compromise, leaving the majority of personnel matters to be discussed freely and candidly in closed session, but permitting an employee to request an open session to defend against specific complaints or charges brought against him or her by another individual and thus to clear his or her name. (*Furtado v. Sierra Community College*, *supra*, 68 Cal.App.4th at p. 882.)

██ ██ ██ Case precedent and an Attorney General opinion[3] provide us the definition of "complaints or charges" as utilized in section 54957. Negative comments in an employee's performance evaluation do not constitute "complaints or charges" within the meaning of section 54957. Indeed, "to merge employee evaluations into the category of 'complaints or charges' in order to permit an open session [would] effectively . . . rewrite the statute." (*Furtado v. Sierra Community College, supra*, 68 Cal.App.4th at p. 882; see also *Fischer v. Los Angeles Unified School Dist., supra*, 70 Cal.App.4th at pp. 100-102 [performance evaluation of probationary teacher at the time of board determination of whether to reelect, even though it may include specific allegations of misconduct, does not constitute the bringing of "specific complaints or charges"].) Rather, given the qualifying phrase in section 54957 that the complaints or charges be "brought against the employee by another person or employee . . . ." "[b]oth 'complaint' and 'charge' connote an accusation, something which is 'brought against' an individual." (78 Ops.Cal.Atty.Gen. 218, 223 (1995); see also *Fischer v. Los Angeles Unified School Dist., supra*, 70 Cal.App.4th at p. 101; *Furtado v. Sierra Community College, supra*, 68 Cal.App.4th at p. 882.)

██ Here, the CIF finding that Bell had violated CIF rule 510, rendering John ineligible and RBV on one-year athletic probation, upon presentation to the Board evolved into a "complaint or charge" brought by other employees (Olson and McHugh directly, on behalf of Johnson and Bethel) and another person (Jessop through her Oct. 2d written findings). Once Olson and McHugh presented the CIF's undue influence finding to the Board as a basis for disciplining Bell, that finding essentially became an accusation—an indictment brought against him with potential disciplinary consequences. As such, Bell was entitled to the opportunity to respond to it, so as to put it in proper factual context, to clear his name and to avoid imposition of discipline. Granted, Bell had testified at the CIF hearing; however, the focus of that hearing was John's eligibility, not whether Bell's conduct giving rise to the CIF rule 510 violation warranted individual discipline by VUSD. In any event, the Board apparently considered the matter *without* the benefit of a written transcript of the CIF hearing, relying primarily on the representations of Olson and McHugh. Under such circumstances, Bell should have been afforded the opportunity to present his version of the facts regarding his role and the roles of other VUSD employees, including those who directly and indirectly presented the CIF finding to the Board. Only within that context

---

[3]"While the Attorney General's views do not bind us [citation], they are entitled to considerable weight [citation]. This is especially true here since the Attorney General regularly advises many local agencies about the meaning of the Brown Act and publishes a manual designed to assist local governmental agencies in complying with the Act's open meeting requirements. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System, supra*, 6 Cal.4th at p. 829.)

could the Board meaningfully evaluate the complaint or charge and, if necessary, later decide upon appropriate discipline.[4]

*Section 54960.1 Does Not Provide an Impediment Here*

■ VUSD contends the trial court abused its discretion when it issued the TRO before the statutory 30-day period had run for VUSD to cure or correct the Brown Act violation. As we shall explain, Bell substantially complied with the statute, the court had jurisdiction to issue the TRO, and VUSD was not prejudiced by the turn of events for it could have remedied the Brown Act violation in a timely manner.

■ As summarized above, the Brown Act imposes an "open meeting" requirement on local legislative bodies, unless a statutory exception applies. (§ 54953, subd. (a).) As to a "complaint or charge," the personnel exception only applies if the employee is provided 24-hour written notice. (§ 54957.) Section 54960.1 permits interested parties to file lawsuits to determine if the local legislative body complied with certain Brown Act statutes, including section 54953. "To state a cause of action, a complaint based on [section] 54960.1 must allege: (1) that a legislative body of a local agency violated one or more enumerated Brown Act statutes; (2) that there was 'action taken' by the local legislative body in connection with the violation; and (3) that before commencing the action, plaintiff made a timely demand of the legislative body to cure or correct the action alleged to have been taken in violation of the enumerated statutes, and the legislative body did not cure or correct the challenged action." (*Boyle v. City of Redondo Beach, supra*, 70 Cal.App.4th at pp. 1116-1117.) Before pursuing judicial determination an action in violation of the Brown Act is null and void, an interested party must first demand the legislative body cure or correct its mistake. (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 978 [84 Cal.Rptr.2d 179]; § 54960.1, subd. (b).) Under the facts presented here, the written demand was required to be made within 90 days from the date the Board took its action (§ 54960.1, subd. (c)(1)); VUSD had 30 days from receipt of the demand to cure or correct the challenged action and to inform Bell in writing of its actions to cure or correct the Board's action or its decision not to do so (§ 54960.1, subd. (c)(2)); and Bell had 15 days from receipt of the written notice to cure or correct, or VUSD's decision not to do so, or following expiration of the 30-day period, to file its action under section 54960.1, subdivision (a) (§ 54960.1, subd. (c)(3) & (4)). Finally, during the pendency of any action under section 54960.1, if the court

---

[4]In light of our holding, we do not address whether Bell's due process rights were violated under the circumstances.

determines the alleged Brown Act violation has been cured or corrected by the legislative body, the action filed pursuant to subdivision (a) shall be dismissed with prejudice. (§ 54960.1, subd. (e).)

■ Here, it is undisputed that Bell faxed the required demand letter to VUSD's counsel on the morning of October 23, 1997, specifically identifying the section 54957 violation and requesting it be corrected. However, the lawsuit was filed that afternoon. The TRO reinstating Bell immediately as head RBV football coach pending further hearing was issued the next day. Later, after the mandamus trial, the court ruled Bell's failure to file suit after the 30-day period to respond expired neither prejudiced VUSD nor barred his mandamus action. The court noted VUSD never objected to Bell's failure to so comply until its demurrer and answer, and had more than 222 days to cure the defects of its October 16, 1997 meeting and had elected not to do so.

That Bell prematurely filed his action did not prejudice VUSD. VUSD was completely aware by his statutory demand to cure the alleged Brown Act violation of its precise nature. On receiving that notice, no obstacle prevented VUSD from pursuing a course of correction. The premature filing of the suit and the issuance of the TRO did not restrict or diminish VUSD's option to correct the alleged violation. In fact, the statutory scheme expressly anticipates curing post filing of an action in section 54960.1, subdivision (e). VUSD simply elected not to do so.

Moreover, at the TRO hearing, VUSD did not object to the jurisdiction of the court or raise this procedural deficiency. Rather, without challenging jurisdiction by a series of stipulations, VUSD agreed to leave the TRO in effect until trial. It now asserts the trial court's TRO did not clearly identify whether it rested upon some substantive or procedural due process violation or simply the alleged Brown Act violation. However, the record on appeal shows VUSD's counsel was specifically advised by the trial court the TRO and request for a preliminary injunction would become moot should VUSD hold an open meeting at which the termination of Bell as coach were confirmed. VUSD knew the trial court granted the TRO upon finding a probable violation of the Brown Act by the Board and that the ruling could be overcome by compliance with the Brown Act. We reiterate section 54960.1, subdivision (e) anticipates potential correction following filing of the mandamus action. VUSD has neither shown the court lacked jurisdiction to intervene nor abused its discretion in issuing the TRO under the circumstances.

*The Trial Court Abused Its Discretion in Awarding Bell $157,674 in Attorney Fees and Costs Under the Brown Act by Failing to First Apportion Out Those Fees and Costs Unrelated to the Brown Act Violation*

VUSD contends the trial court abused its discretion in granting Bell's motion for $157,674 in attorney fees and costs in its entirety under section 54960.5. The trial court found the requested fees and costs were all reasonable and necessarily incurred by VUSD's Brown Act violation, thus requiring no apportionment. The court also found the award was proper under Code of Civil Procedure section 1021.5 because the litigation bestowed a significant benefit on the general public or a large class of persons. VUSD does not contest the validity of the submitted hours and the billing rate. Rather, it challenges those fees incurred that it asserts did not relate to the Brown Act violation. In other words, it asserts the trial court abused its discretion in awarding fees and costs which were incurred in pursuing solely Bell's tort actions. We agree, reverse that portion of the judgment awarding attorney fees and costs, and remand the matter to the trial court to recalculate that award following reasonable apportionment.

Section 54960.5 expressly provides the trial court with discretion to "award court costs and reasonable attorney fees to the plaintiff in an action brought pursuant to Section 54960 or 54960.1 where it is found that a legislative body of the local agency has violated this chapter [the Brown Act]." Such an award "is not mandatory, but rather a matter entrusted to the sound discretion of the trial court. [Citations.]" (*Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781, 800 [22 Cal.Rptr.2d 641]; *Boyle v. City of Redondo Beach, supra,* 70 Cal.App.4th at p. 1120.) A condition precedent to a plaintiff's recovery of such fees and costs is a violation of the Brown Act. (*Henderson v. Board of Education* (1978) 78 Cal.App.3d 875, 884 [144 Cal.Rptr. 568].) Indeed, "the Brown Act provides specific legislative authorization for attorney's fees in actions brought to enforce a public policy in a context where actual recoverable damages are likely to be trivial. The damage is to the public integrity, and the fees are designed to make it economically feasible to rectify that damage by private legal means." (*Common Cause v. Stirling* (1981) 119 Cal.App.3d 658, 664 [174 Cal.Rptr. 200].) In exercising its discretion as to whether to award fees under this provision, the trial court should consider among other matters "the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit." (*Id.* at p. 665; *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 302 [81 Cal.Rptr.2d 456].)

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not

permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [94 Cal.Rptr.2d 448].) Upon determining an award of attorney fees and costs is appropriate under section 54960.5 for a Brown Act violation, apportionment of fees and costs similarly rests within the sound discretion of the trial court. (See *San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority* (1998) 61 Cal.App.4th 910, 920 [72 Cal.Rptr.2d 91], disapproved on other grounds in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1097, fn. 5 [95 Cal.Rptr.2d 198, 997 P.2d 511].) " 'A trial court's exercise of discretion is abused only when its ruling " 'exceeds the bounds of reason, all of the circumstances before it being considered.' " [Citation.]' " (*San Dieguito Partnership, supra*, 61 Cal.App.4th at p. 920, quoting *Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 479 [65 Cal.Rptr.2d 473].) Such fees need not be apportioned when incurred for representation on an issue common to both causes of action in which fees are proper and those in which they are not. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130 [158 Cal.Rptr. 1, 599 P.2d 83].) Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units. (See *Akins v. Enterprise Rent-A-Car Co., supra*, 79 Cal.App.4th at p. 1133; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286]; Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 1999) § 6.28, p. 6-38.)

Emphasizing that only four of Bell's 15 causes of action related to the Brown Act and that the remaining claims for damages involved wrongful termination (retaliatory firing), defamation, violation of civil rights and intentional infliction of emotional distress, VUSD asserts neither Bell nor the trial court attempted to apportion the fees and costs between the Brown Act violation and the 11 causes of action for damages. VUSD asserts that Bell would have sued it for damages based on these latter claims regardless whether a Brown Act violation had occurred. It notes his billing consists mostly of work done on the damages case, unrelated to the Brown Act violation, including opposing demurrers brought by individual defendants; deposing VUSD employees and students; litigating the case against the CIF; preparing for the mediation that primarily concerned the damages case; and working on Ryan's lawsuit in which counsel obtained $48,000 in fees from the CIF. VUSD also challenges a significant portion of the costs awarded as explicitly or impliedly prohibited by Code of Civil Procedure section 1033.5 or incurred for depositions of persons unrelated to the Brown Act issue. Bell defends the trial court's decision not to apportion by characterizing the litigation as involving complex issues of law, an aggressive defense and an

abundance of defense attorneys. He notes VUSD ignored four early written requests to cure or mediate (which would have stayed the litigation, demurrers and discovery), initially removed the action to federal court, asserted unsuccessful demurrers to all causes of action and aggressively litigated the matter through trial. Bell cites his attorney's statements that his entire billing was necessitated by the Brown Act violation and he refrained from doing anything unless it was absolutely necessary for the trial of the Brown Act issues, the mediation with Retired Associate Justice Howard Wiener and the return of Bell's coaching position. Finally, he rests on his counsel's "detailed billing" submitted to the court.

Our review of the first amended petition and complaint and the parties' papers in support of and in opposition to the attorney fees motion, especially Bell's, persuades us that neither Bell's counsel nor the court made a serious and good faith attempt to apportion fees and costs consistent with the statutory mandate. Granted, had VUSD cured the Brown Act violation immediately by holding a timely second hearing in open session as suggested by the court or pursued Bell's early requests to settle, this litigation could have been reasonably resolved in a timely fashion and its corresponding cost would have been substantially diminished. However, VUSD's failure to pursue what appears now to be a more reasonable stratagem to resolve this matter does not warrant a fee and cost award above and beyond the statutory mandate.

This case only involves a single violation of the Brown Act, the failure to provide Bell under section 54957 with 24-hour written notice the Board intended to consider a charge or complaint against him in closed session and advising him of his right to have the matter heard in public. The four causes of action for injunctive relief, alternative writ of mandamus, peremptory writ of mandamus and declaratory relief all sought redress for the same Brown Act violation. Consistent with section 54957, they sought a declaration VUSD violated the Brown Act and Bell's entitlement to an open session regarding this matter, as well as his reinstatement since any disciplinary action taken by the Board against him in closed session on the specific complaint based on the CIF undue influence finding was expressly null and void under the statute. However, the primary economic focus of this litigation underlying the 11 remaining causes of action was Bell's perception he was wrongfully terminated from his football coach position, the victim of a retaliatory firing for exposing the misconduct of other VUSD officials, and his quest for damages. Although the Brown Act violation may have procedurally facilitated the wrongful termination or retaliatory firing, it did not substantively beget it. Simply stated, they constitute two separate and distinct claims, one entitled to statutory fees and the other not.

The trial court thus abused its discretion in failing to apportion the requested fees and costs between those relating to the Brown Act violation and the remaining causes of action for damages. As summarized above, Bell is entitled to reasonable attorney fees and court costs attributable to his action under section 54960.1. However, he is not entitled to such fees and costs incurred as a result of prosecuting his claims for damages, which the parties later resolved by settlement, with Bell receiving $125,000 and a paid leave of absence. The court's failure to apportion the fee award contradicts the express scope of the Brown Act fee provision (§ 54960.5), limiting the recovery of fees and costs to actions brought under sections 54960 and 54960.1.

A cursory review of Bell's attorney's submitted billing and supporting declaration reveals not only that apportionment was required here, but also that neither counsel nor the court endeavored to do so. For example, in his affidavit, Bell's attorney stated he was required to literally spend weeks preparing opposition to the defendants' demurrers. Even though he argued alternatively against apportionment, he candidly admitted the majority of time spent on the demurrers related to those causes of action seeking damages, suggesting the cost for opposing the demurrers could be apportioned 29 percent to the Brown Act violation (reflecting the percentage of the total demurrer time associated with the four causes of action tried). Although we consider his suggested apportionment liberal, given the single Brown Act violation, the court did not adopt it. As to the mediation, Bell's attorney again acknowledged he took two depositions (Australian basketball player Simon Kent and wrestling coach Marty Nellis) in preparation for it, which served his client only in the damage portion of the case and were of no benefit as to the Brown Act violation. Again, the court did not apportion relevant fees and costs accordingly. Otherwise, Bell's attorney made no attempt to apportion the incurred fees and costs. As to the submitted billing, we agree with VUSD that the blocked-billing entries render it virtually impossible to break down hours on a task-by-task basis between those related to the Brown Act violation and those that are not. If counsel cannot further define his billing entries so as to meaningfully enlighten the court of those related to the Brown Act violation, then the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside.

Bell's reliance on Code of Civil Procedure section 1021.5, as an independent basis for sustaining the trial court's award and allegedly rendering apportionment moot, is misplaced. Code of Civil Procedure section 1021.5, authorizing private attorney general fees, codifies the private attorney general doctrine adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141

Cal.Rptr. 315, 569 P.2d 1303]. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193 Cal.Rptr. 900, 667 P.2d 704]; *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1566 [46 Cal.Rptr.2d 667].) The doctrine is designed to encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where statutory or constitutional rights have been violated. (*Olney v. Municipal Court* (1982) 133 Cal.App.3d 455, 463 [184 Cal.Rptr. 78].) However, Code of Civil Procedure section 1021.5 was not "intended to affect already existing specific statutory fee provisions, such as section 54960.5. Rather, Code of Civil Procedure section 1021.5 was intended to provide specific guidelines for the exercise of inherent judicial power to award fees not specifically authorized by statute." (*Common Cause v. Stirling, supra,* 119 Cal.App.3d at p. 663.) Consequently, because section 54960.5 expressly provides statutory authorization for recovery of attorney fees and costs for Brown Act violations, the trial court improperly relied alternatively on Code of Civil Procedure section 1021.5.[5]

Nevertheless, even if Code of Civil Procedure section 1021.5 could be applied here, it would not render the issue of apportionment moot. In determining whether to award attorney fees under Code of Civil Procedure section 1021.5 to the "successful party," we apply a three-prong test inquiring whether (1) the litigation resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit has been conferred on the general public or a large class of individuals, and (3) the necessity and financial burden of private enforcement renders the award appropriate. (*Family Planning Specialists Medical Group, Inc. v. Powers, supra,* 39 Cal.App.4th at p. 1567; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 169-170 [17 Cal.Rptr.2d 510].) Regarding the nature of the public right, it must be important and cannot involve trivial or peripheral public policies. The significance of the benefit conferred is determined from a realistic assessment of all the relevant surrounding circumstances. As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation

---

[5]Granted, "[t]he private attorney general statute is analogous to the Brown Act's attorney fees provision in that both authorize compensation for private actions which serve to vindicate important rights affecting the public interest. [Citations.]" (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc., supra,* 69 Cal.App.4th at p. 303.) Appellate courts have been guided by decisions involving fees under the private attorney general theory in addressing the propriety of attorney fee awards under the Brown Act. (*Ibid.*)

is out of proportion to the plaintiff's individual stake in the matter. (*Olney v. Municipal Court, supra,* 133 Cal.App.3d at pp. 463-464.)[6]

Even if Bell conferred a significant benefit on the general public by protecting its interest in having access to VUSD meetings, reaffirming procedural due process protections, exposing serious problems at RBV and protecting the rights of his fellow employees, the primary focus of his litigation was personal, that is his reinstatement and quest for compensatory damages. In this context, the Brown Act violation was simply incidental to his personal and pecuniary interests in the matter. To render apportionment moot, he must establish the cost of his victory transcended his personal interests such that the necessity for pursuing the lawsuit placed a burden on him out of proportion to his individual stake in the matter. However, he was statutorily entitled to attorney fees and costs arising from the Brown Act violation under section 54960.5. He had a financial incentive in bringing the lawsuit. His litigation goal was always to obtain reinstatement and compensatory damages. He accomplished that goal by being reinstated, having the discipline rescinded and later recovering more than $125,000 in settlement. Consequently, this is not a case where Bell has shown his expenses in bringing the suit are disproportionate to his personal stake in the outcome of litigation, but rather one where the enforcement of the public interest is merely incidental to the obtaining of personal goals. (See *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 750-751 [246 Cal.Rptr. 285].)[7]

Finally, VUSD challenges the trial court's award of costs, asserting that approximately $4,200 of them are either explicitly or impliedly prohibited by Code of Civil Procedure section 1033.5 (i.e., photocopy, postage, telephone, facsimile and "attorney services" charges). Additionally, it challenges the costs incurred for depositions of persons unrelated to the Brown Act issue. Where a statute authorizes an award of fees and costs, but is silent as to which costs are to be awarded, Code of Civil Procedure section 1033.5 provides the courts with guidance as to those costs that may or may not be recovered in a civil action. (See *Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th

---

[6]We note the decision whether the claimant has proved each of these prerequisites and is thus entitled to an award of attorney fees under Code of Civil Procedure section 1021.5 rests within the sound discretion of the trial court and that discretion shall not be disturbed on appeal absent a clear abuse. (*Family Planning Specialists Medical Group, Inc. v. Powers, supra,* 39 Cal.App.4th at p. 1567; *Olney v. Municipal Court, supra,* 133 Cal.App.3d at p. 464.)

[7]Although section 54960.5 has been interpreted to authorize an award of attorney fees on appeal (*Boyle v. City of Redondo Beach, supra,* 70 Cal.App.4th at p. 1121; *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc., supra,* 69 Cal.App.4th at pp. 303-304), our reversal of the trial court's order awarding attorney fees with directions on remand to recalculate the award following reasonable apportionment persuades us under the circumstances presented here to deny Bell's request for fees and costs on appeal.

436, 441-445 [71 Cal.Rptr.2d 452, 950 P.2d 567]; *Page v. Something Weird Video* (C.D.Cal 1996) 960 F.Supp. 1438, 1447.) Bell has not offered any reason nor can we perceive of one why that statutory guidance should not govern here under the circumstances. Accordingly, on remand, the trial court is directed to award only allowable costs after reasonable apportionment. (See, e.g., *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 773-775 [23 Cal.Rptr.2d 810].)[8]

### Disposition

The judgment is reversed as to the attorney fees and costs award and the matter is remanded to the trial court to recalculate the award following reasonable apportionment consistent with this opinion. In all other respects, the judgment is affirmed. Each party to bear its own costs on appeal.

Benke, J., and McIntyre, J., concurred.

A petition for a rehearing was denied July 26, 2000, and respondent's petition for review by the Supreme Court was denied September 20, 2000.

---

[8]Because we conclude Code of Civil Procedure section 1021.5 does not apply here as to the Brown Act violation, we need not address whether Bell's costs would be recoverable under the private attorney general theory. (See *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1420-1422 [1 Cal.Rptr.2d 459] [concluding that expert witness fees are a recoverable item of costs in age discrimination actions brought in the public interest].)