Filed 5/3/21  Southern Cal. School of Theology v. Claremont Graduate University
CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SOUTHERN CALIFORNIA SCHOOL OF THEOLOGY, | B302452 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KC068691) |
| v. | |
| CLAREMONT GRADUATE UNIVERSITY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gloria White-Brown, Judge.  Reversed.

Loeb & Loeb, Paul Rohrer, W. Allan Edmiston; Greines, Martin, Stein & Richland, Robin Meadow, David E. Hackett, and Eleanor S. Ruth for Defendants and Appellants.

Jackson Tidus, Charles M. Clark and Kathryn M. Casey for Plaintiff and Respondent.

_____

As part of a property dispute between Southern California School of Theology (SCST)[1] on one hand and Claremont Graduate University (CGU) and Claremont University Consortium (CUC) (collectively Claremont)[2] on the other, Claremont alleged a cause of action against SCST for breach of an agreement the parties entered into in 2006.  After a bench trial that included—among a variety of other causes of action and issues—SCST's alleged breach of the 2006 agreement, the trial court concluded that

_____

[1] "SCST does business as the Claremont School of Theology. SCST is not one of the Claremont Colleges, but is an 'affiliate' of the Claremont Colleges.  According to the Claremont University Consortium's policy and procedure manual, affiliate 'status . . . has recognized a special collaborative educational relationship between the affiliate and at least one of the member Claremont Colleges . . . [and a] mutual benefit to both the affiliate and members of The Claremont Colleges.' " (*Southern California School of Theology v. Claremont Graduate University* (2021) 60 Cal.App.5th 1, 3, fn. 2 (*Claremont I*).)

[2] "Claremont University Consortium (currently known as The Claremont Colleges, Inc.) oversees centralized planning, services, and programs for the Claremont Colleges—Pomona College, Scripps College, Claremont McKenna College, Harvey Mudd College, Pitzer College, Keck Graduate Institute, and Claremont Graduate University.  Claremont Graduate University was established in 1925 as Claremont College, but is now its own corporate entity separate from the Claremont University Consortium." (*Claremont I, supra,* 60 Cal.App.5th at p. 3, fn. 1.)

Claremont had not demonstrated that SCST breached the 2006 agreement.

SCST filed a post-judgment motion under the 2006 agreement's attorney fee clause pursuant to Civil Code section 1717 seeking a total of $939,600.50 in attorney fees.[3] The amount represented all of SCST's attorney fees in the litigation after Claremont first alleged its cause of action for breach of the 2006 agreement, without separating out any fees attributable to other claims in the lawsuit. The trial court concluded that it should apportion SCST's fees and award only fees expended in connection with litigation specifically related to the 2006 agreement. The trial court based its award on (1) a perceived concession by Claremont about the amount of fees related to the cause of action for breach of the 2006 agreement, (2) its own determinations of reasonable hourly rates regarding only the contract cross-claim for the attorneys and paralegals working on behalf of SCST, and (3) attorney time spent on said contract claim. The trial court awarded a total of $369,811.50 in fees to SCST.

Because we conclude that the trial court based its award on an incorrect legal standard, we will reverse and instruct the trial court to reconsider its order.

## BACKGROUND

We draw much of the relevant background from our opinion in *Claremont I*, *supra*, 60 Cal.App.5th 1.

### A. SCST affiliates with the Claremont Colleges

---

[3] Further statutory references are to the Civil Code unless otherwise specified.

"SCST withdrew from the University of Southern California in 1956. In 1957, it affiliated with the Claremont Colleges and purchased the land it now sits on (adjacent on two sides to [CGU] and near the remaining Claremont Colleges) for approximately $107,500.

"As part of the transaction transferring land and affiliating SCST and the Claremont Colleges, SCST and Claremont executed, among other documents, a grant deed and a written agreement (the 1957 Agreement). The deed contained two conditions subsequent" that we referred to in *Claremont I* as the Educational Use Clause and the First Offer Clause. (*Claremont I*, *supra*, 60 Cal.App.5th at pp. 4-5, fns. omitted.)

The Educational Use Clause required that no activity other than that "usual and appropriate for an educational institution of collegiate grade" should be conducted on the property Claremont transferred to SCST. (*Claremont I*, *supra*, 60 Cal.App.5th at p. 5.) The First Offer Clause provided that if SCST either did not develop the property as its "principal establishment and headquarters," or if SCST "should cease to exist," or if SCST stopped using the property as its "principal place of carrying on its activities," then it was to offer the property for sale to Claremont on certain specified terms. (*Ibid.*) "The deed made the conditions subsequent enforceable by a power of termination and right of reentry clause." (*Ibid.*)

"The 1957 Agreement incorporated 'the terms and conditions of the said Deed' and set forth in detail the 'terms and conditions' of the First Offer Clause and, among other provisions, a number of obligations by each party giving contour to the Educational Use Clause." (*Claremont I*, *supra*, 60 Cal.App.5th at p. 5.)

4

"In 2001, the parties entered into an agreement to 'amend and reaffirm' the 1957 Agreement. . . . In 2006, Claremont and SCST were both parties (among several other entities) to an agreement that acknowledged the 1957 Agreement and that it had been 'amended and reaffirmed' by the 2001 agreement." (*Claremont I, supra*, 60 Cal.App.5th at p. 4, fn. 4.) This 2006 agreement contained the attorney fee clause at issue here.

### B. The 2006 Agreement

In 2006, as part of Claremont Graduate University's development of new graduate student housing, CUC, CGU, SCST, Rancho Santa Ana Botanic Garden, and Keck Graduate Institute negotiated and entered into an agreement regarding the use of College Avenue, a private roadway, for each campus's access and parking purposes.

As between SCST and Claremont, the 2006 agreement contained, among other operative language, the following clauses:

- "Pursuant to that certain agreement between Claremont College, CUC's predecessor-in-interest, and [SCST] dated as of June 5, 1957, as amended and reaffirmed by that certain agreement between CUC and [SCST] dated as of March 1, 2001 (collectively the 'CST Agreement'), CUC granted [SCST] permission, in the form of a revocable license, to use that certain private roadway commonly known as College Avenue as a roadway ('CST College Avenue License')."

- "In consideration of the terms and provisions of the CST Agreement and the grant by CUC to [SCST] of the Easements in . . . this Agreement, CUC and [SCST] hereby agree to terminate the CST College Avenue License in its entirety. With the exception of any

5

contrary provisions of this Agreement, all terms and provisions of the CST Agreement remain in full force and effect."

- "If any party shall breach any provision of this Agreement, then each of the other Parties may institute legal action against the defaulting Party for specific performance, injunction, declaratory relief, damages or any other remedy provided at law or in equity. The prevailing Party(ies) in any such action shall be entitled to recover from the losing Party(ies) its or their reasonable attorneys' fees and expenses incurred in connection with such default including, without limitation, those incurred in connection with the execution, collection and enforcement of any judgment."

The 2006 agreement also provided that California law governed the agreement.

### C. SCST and Claremont's Dispute and Litigation

"In 2015, SCST approached the [CUC] to determine whether it or any of the Claremont Colleges had an interest in purchasing or leasing any part of the SCST campus or otherwise helping SCST to financially leverage the property through 'partnership opportunities for new development' or by '[c]o-locating services or functions.' [CUC] and SCST negotiated, but never reached any agreement regarding SCST's campus property. SCST marketed the property for sale, and ultimately received offers.

"SCST filed suit against Claremont in August 2016 asking the trial court to quiet title against Claremont and to declare that the Educational Use Clause and First Offer Clause had expired pursuant to the [Marketable Record Title Act (MRTA) (§ 880.020

6

et seq.)]. Claremont cross-complained, alleging that SCST had breached the deed, the 1957 Agreement, and other agreements by marketing the property without first offering it for sale to Claremont on the terms of the First Offer Clause and seeking specific performance of the First Offer Clause and a declaration that the terms of the parties' agreements remain valid in spite of the MRTA." (*Claremont I*, *supra*, 60 Cal.App.5th at pp. 5-6.)

Claremont responded to SCST's complaint in October 2016. In its original cross-complaint, Claremont alleged causes of action for breaches of the 1957 documents transferring property and memorializing the transfer between Claremont and SCST (the deed and the related contract), breach of the 2001 agreement amending and reaffirming the 1957 Agreement, reformation, promissory estoppel, breach of a 1972 deed, specific performance, restitution, and declaratory relief.

In a First Amended Cross-Complaint (FACC), filed in January 2017, Claremont added allegations and a cause of action related to the 2006 agreement. Claremont's operative pleading at trial was a Second Amended Cross-Complaint (SACC), filed in April 2018, which contained as its fourth cause of action allegations that SCST had breached the 2006 agreement "by, without limitation, refusing to honor the 1957 and 2001 Agreements as being 'in full force and effect', by refusing to agree that the 1957 Agreement had been reaffirmed, and by refusing to honor" the First Offer Clause.

"The matter was tried to the court [(Judge Dan Thomas Oki)] in September 2018, and on December 18, 2018, the trial court issued a lengthy written statement of decision. The trial court concluded that the Educational Use and First Offer Clauses

7

had expired by operation of the MRTA on January 1, 1988." (*Claremont I, supra,* 60 Cal.App.5th at p. 6.)

Pertinent here, the trial court concluded that SCST "did not expressly agree [in the 2006 agreement] that the [1957 and 2001 Agreements] remained valid and enforceable."

The trial court ultimately enforced the Educational Use Clause as written and—based on the forfeiture doctrine—"[chose] to interpret the [First Offer Clause] as a 'First Right of Refusal' " enforceable by terms it created by injunction.

The trial court entered judgment in January 2019. The court concluded that CGU and CUC were the prevailing parties at trial. But for purposes of Claremont's cause of action for breach of the 2006 agreement, the judgment stated: "On the fourth cause of action for breach and enforcement of the 'Agreement and Grant of Easements' dated as of September 21, 2006, CGU and [CUC] shall take nothing and [SCST] shall have judgment."

We reversed the trial court's order on grounds unrelated to the breach of contract allegations. We concluded that the trial court erred when it refashioned the First Offer Clause into a right of first refusal. We remanded to the trial court with instructions to enter judgment enforcing the First Offer Clause as written. (*Claremont I, supra,* 60 Cal.App.5th 1.)

## D. SCST's Attorney Fee Motion, Hearing, and the Trial Court's Order

Judge Oki retired and the case was reassigned to Judge Gloria White-Brown.

In March 2019, SCST moved the trial court for an order awarding all of the attorney fees it incurred in the case after Claremont filed the FACC—the first pleading alleging breach of

8

the 2006 agreement. SCST argued that Claremont's allegations regarding the 2006 agreement incorporated every issue in the litigation that touched on the First Offer Clause. "[T]o adjudicate the [breach of the 2006 agreement cause of action] all issues in the dispute needed to be adjudicated," according to SCST. In its motion, SCST argued that fees should not be apportioned as between the cause of action for breach of the 2006 agreement and any other issue in the litigation.

In support of its motion, SCST provided the trial court with the declaration of its attorney outlining what he termed "key events" in the litigation following Claremont's filing of the FACC. The declaration detailed the experience and qualifications of SCST's attorneys and paralegals. The declaration also broadly summarized work performed based on invoices for counsel's work for SCST after the FACC was filed. The declaration attached as exhibits the trial court's docket, Claremont's cross-complaint, SCST's demurrers to the cross-complaint, the FACC, Claremont's posttrial "closing brief," the trial court's statement of decision and judgment, and heavily redacted invoices for legal work done by SCST's counsel from January 2017 to February 2019.

SCST's motion sought a total of $939,600.50 in attorney fees.

In its opposition to SCST's motion, Claremont argued that if it were to award fees to SCST, the trial court must apportion them. "Where a contract claim is joined with other causes of action beyond the contract, the prevailing party may only recover attorneys' fees relating to the contract cause of action," Claremont argued.

The trial court issued a tentative ruling granting SCST's motion in its entirety. In its tentative ruling, the trial court

9

concluded that apportionment of SCST's attorney fees was "not warranted and would be impracticable." "The cause of action for breach of the 2006 Agreement . . . adjudicated all the issues in the litigation relating to the" First Offer Clause, the trial court explained. "The court determines that all work performed in connection with this matter after the FACC was filed related to the breach of the 2006 Agreement cause of action, such that apportionment is not warranted and would be impracticable."

After taking the matter under submission at the August 8, 2019 hearing, on September 23, 2019, the trial court issued an order "requesting the parties to submit additional detailed briefing regarding apportionment of attorney's fees and reasonableness of the attorney's fees and costs" and explaining that it would not hear further argument.

Claremont and SCST both filed the requested supplemental briefs. In its briefing, Claremont argued in favor of apportionment and provided the trial court with a detailed analysis of SCST's attorney fee invoices. Claremont's analysis purported to include in its analysis each entire billing block where even a part of the block appeared related to litigation regarding the 2006 agreement. Based on the invoices' block billing, which Claremont argued made time allocable to individual tasks indistinguishable, and SCST's redactions, which further prevented allocation of time to tasks, Claremont argued that the trial court should award SCST no more than 10 percent of the total amount of the identified billing blocks.[4]

---

[4] "Block billing occurs when 'a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each

Claremont applied a two-step analysis to arrive at fees allocable to the 2006 agreement cross-claim: (1) Claremont totaled every block-billed invoice, some heavily redacted, which reflected work, even in part, related to the 2006 agreement; those invoices totaled $479,802; (2) it then discounted that amount by 90 percent, which it argued represented the value of work allocable to the 2006 agreement cross-claim. Claremont referred to this discounting as applying a negative multiplier and asserted its methodology was approved in *In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667 (*Nassimi*), *Bell v. Vista Unified Sch. Dist.* (2000) 82 Cal.App.4th 672 (*Bell*), and *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315 (*CRI*). Based on its analysis, Claremont argued that the trial court should award no more than $47,980.20 in attorney fees to SCST.

SCST argued that the trial court should not apportion fees. SCST also argued that Claremont's analysis amounted to a concession that the amount of SCST's fees attributable to litigation regarding breach of the 2006 agreement was $479,802.00—the total amount of fees represented by billing blocks that Claremont identified as even partially related to the 2006 agreement cause of action.

The trial court issued its order granting SCST's motion for attorney fees on November 5, 2019. In its order, the trial court explained that since the hearing it had further considered the apportionment question and "[u]pon further consideration, the court believes that apportionment in this matter is, in fact, warranted and possible under the facts and circumstances of this

---

task.'" (*Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 279.)

11

case." The trial court recited the parties' arguments, including Claremont's "apportionment summary," and explained that it "*consider*[*ed Claremont's*] *statement that they 'categorize[ ] this work, for apportionment purposes, as at least generally touching on or relating to . . . the cross-claim for breach of the 2006 Agreement' to be a significant concession*." (Original italics.) The trial court rejected Claremont's argument that it should award no more than 10 percent of SCST's attorney fees because it found Claremont had not cited any authority for applying a negative multiplier. The trial court made further assessments of the reasonableness of the fees SCST requested, reduced hourly rates according to its assessment, and made a small reduction in the amount of time attributable to one attorney. Based on its analysis, the trial court awarded SCST $369,811.50 in attorney fees.

Claremont filed a timely notice of appeal.

## DISCUSSION

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).) Based on its conclusion that SCST "did not expressly agree [in the 2006 agreement] that the [1957 and 2001 Agreements] remained valid and enforceable," the trial court concluded that SCST was the prevailing party on Claremont's cause of action for breach and enforcement of the 2006 agreement. Neither party disputes that conclusion for purposes of this appeal.

12

Section "1717 provides that '[r]easonable attorney's fees shall be fixed by the court.' . . . [T]his requirement reflects the legislative purpose 'to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions.' [Citation.] Consistent with that purpose, the trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1094-1095 (*Drexler*).) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." (*Id.* at p. 1095, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] . . . [Citations.] The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Drexler*, *supra*, 22 Cal.4th at p. 1095.)

"It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court, whose decision cannot be reversed in the absence of an abuse of discretion. [Citations.] The value of

13

legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624; accord *Drexler*, *supra*, 22 Cal.4th at p. 1096.)

"Abuse of discretion is the standard applicable to review of an attorney fees award." (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249.) "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' " (*Troxell v. Troxell* (1965) 237 Cal.App.2d 147, 152; accord *Maughan*, at p. 1249.)

"Although this standard is deferential, a court abuses its discretion 'where no reasonable basis for the action is shown.' " (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1367.) "Since attorney fee awards are generally reviewed for abuse of discretion, the award will be upheld unless ' "there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence." ' " (*Id.* at

14

pp. 1367-1368.) "While a trial court has 'broad authority' in determining the amount of reasonable legal fees [citation], it is an abuse of discretion to apply the 'wrong legal standard.' " (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 370 (*Walker*).)

The party requesting attorney fees " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' [Citation.] To that end, the court may require [the movant] to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." ' [Citation.] The court also may properly reduce compensation on account of any failure to maintain appropriate time records." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.)

Claremont contends the trial court abused its discretion in awarding attorney fees based on the sufficiency of the evidence to support the award. Specifically, Claremont contends that the evidence SCST provided the court was not sufficient for the court to determine what work was attributable to the cause of action for breach of the 2006 agreement in Claremont's SACC as distinct from work attributable to the wide array of other issues the litigation encompassed. Claremont's challenges are largely focused on SCST's attorneys' block-billing practices and SCST's extensive redactions to the invoices it produced to support its fee motion.

"Block billing presents a particular problem for a court seeking to allocate between reimbursable and unreimbursable fees, and trial courts are granted discretion 'to penalize [block billing] when the practice prevents them from discerning which tasks are compensable and which are not.' " (*Nassimi*, *supra*, 3

Cal.App.5th at p. 695.)  "If counsel cannot further define his billing entries so as to meaningfully enlighten the court of those related to [a specific cause of action], then the trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside." (*Bell, supra,* 82 Cal.App.4th at p. 689.)  SCST's redactions present largely the same issue, particularly in light of the trial court's decision to limit fees to those attributable to litigation regarding the 2006 agreement.

SCST presented and argued its motion as though it was entitled to all the fees it incurred after Claremont filed its FACC. The evidence it provided to the court was tailored to that argument.  In its supplemental brief to the court, it offered the trial court no way to meaningfully apportion time between causes of action in the event the trial court were inclined to do so.  The invoices SCST provided the court are heavily redacted on privilege grounds, and the billing blocks are largely vague and describe in the most basic terms the work performed.

The trial court here carefully, thoughtfully, and thoroughly examined and analyzed the evidence before it.  And while the "new" judge on the matter may not have had the familiarity with the entirety of the proceedings that the trial judge in the ordinary course might have, the judge had no less expertise in what constitutes a reasonable fee for work performed in her courtroom and the value of the services of the attorneys who appeared before her.  Although the trial court was not required to provide a statement of decision "or otherwise detail its fealty to the law, which we presume," (*CRI, supra,* 165 Cal.App.4th at p. 1323) the trial court here *did* provide a detailed analysis of its examination and conclusions regarding the evidence and arguments, and the weight it gave particular evidence in making its award.

To be sure, the trial court's order outlines the history of the litigation and the way the 2006 agreement fit into the entire litigation.  The trial court examined invoices and omitted time entries that Claremont demonstrated had no bearing on the 2006 agreement.  The trial court drew its own conclusions regarding the reasonableness of the hourly rates of legal professionals involved in SCST's representation.  And the trial court reduced the time on which it based the lodestar applicable to one attorney.

The trial court relied on *Claremont's* supplemental analysis of *SCST's* evidence to conclude that only $469,000 of the block billing arguably related to work on the contract cross-claim.  Claremont points out here, though, and the trial court acknowledged in its order, that Claremont's $469,000 number *necessarily included* allocation of time not attributable to the 2006 agreement.

The foundation of Claremont's analysis—upon which the trial court based its award—was block-billed time entries that Claremont explained *included both time that was attributable to the 2006 agreement and time that was not*.  And because the entries were block billed, there was no meaningful way to discern how much of each entry could be attributed to the 2006 agreement.  In its order, the trial court noted that Claremont "argue[s] that 'a multiplier of no higher than 10% should be applied' " to the total base amount of all of the block-billed entries that touched on the 2006 agreement.  The trial court, however, rejected Claremont's assertion, appearing to believe it had no authority to apply the requested multiplier:  "This is a proposed 95% reduction in fees.  [Claremont], however, [has] failed to

17

provide the court with any authority supporting the application of a negative multiplier as a basis to apportion fees."

Claremont provided the trial court with the same authority we have relied on here. Claremont advised the trial court of its considerable discretion to fashion an award of reasonable fees, including specifically its authority to "assig[n] a reasonable percentage to [time] entries, or simply cast them aside," citing *Bell*, *supra*, 82 Cal.App.4th at page 689. We find no abuse in the trial court's exercise of its discretion *as far as it exercised that discretion*. It appears to us, however, that because the trial court believed itself to be without authority to apply a negative multiplier to reduce the fee award in an amount proportionate to the work attributable to the 2006 agreement, the trial court may not have been aware of the full extent of its discretion in fashioning an attorney fee award.

To the extent the trial court awarded fees based on an incomplete understanding of its authority, we conclude the trial court abused its discretion. (See *Walker*, *supra*, 204 Cal.App.4th at p. 370 [trial court abuses its discretion when it applies an incorrect legal standard].) We will reverse the trial court's order and ask the trial court on remand to reconsider its award with the understanding that—if it chooses to do so—it may apply a negative multiplier as a basis to apportion fees. (See *Nassimi*, *supra*, 3 Cal.App.5th at p. 696; also *Bell*, *supra*, 82 Cal.App.4th at p. 689.)

## DISPOSITION

The trial court's order awarding attorney fees under section 1717 is reversed. On remand, the trial court will reconsider its order based on its full authority to fashion an attorney fee award

18

under section 1717.  Appellants are awarded their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.