Filed 5/30/14  Sanders v. Langmuir-Logan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS A. SANDERS, as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GARFIELD LANGMUIR-LOGAN et al., <br><br> Defendants and Appellants. | G048524 <br><br> (Super. Ct. No. 30-2011-00468519) <br><br> ORDER MODIFYING OPINION; DENYING REQUEST FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on May 14, 2014, be modified.

At the bottom of page 6 and continuing to the top of page 7, the following three sentences will be deleted:  "As indicated above, we reversed the judgment only as to the Company.  The judgment against Logan was affirmed.  The Trust, as the prevailing party, may recover fees against Logan, but not the Company."

These sentences will be replaced by the following two sentences:  "As indicated above, the judgment against Logan and the Company was affirmed.  The Trust,

as the prevailing party, may recover attorney fees." The footnote remains unchanged at the end of the first paragraph on page 7.

This correction is a modification that does not change the judgment.

The petition for rehearing is denied.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS A. SANDERS, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GARFIELD LANGMUIR-LOGAN et al.,<br><br>    Defendants and Appellants. | G048524<br><br>(Super. Ct. No. 30-2011-00468519)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Richard W. Luesebrink, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Logan Law and Rhonda L. Morgan; Everett L. Killman for Defendants and Appellants.

Hicks, Mims, Kaplan & Burns, Robert H. Garretson and Stephen L. Kaplan for Plaintiff and Respondent.

In a concurrently filed opinion we addressed challenges made to a judgment entered against Garfield Langmuir-Logan (Logan) and his limited liability company, Institutional Secured Properties (the Company), after they were found liable for elder financial abuse, deceit, and breach of fiduciary duty. (*Nicholas A. Sanders et al., v. Garfield Langmuir-Logan et al.* (May14, 2014, G047997) [nonpub. opn.] (*Sanders I*).) The victims were Joseph L. and Kathleen H. Sanders (and their family trust (the Trust)). The underlying lawsuit was filed by their son Nicholas A. Sanders (Nicholas),[1] as trustee of the Trust.

In the *Sanders I* opinion, we rejected the argument the Trust lacked standing to bring a direct action against Logan and Company (hereafter collectively referred to as "Logan" for convenience, unless the context requires otherwise), and we concluded there was sufficient evidence to support the court's verdict. (*Sanders I, supra*, G047997.) In this appeal, Logan maintains the court erroneously granted the Trust's motion for attorney fees as the prevailing party on the elder financial abuse claim. Alternatively, he asserts the amount of fees awarded must be reduced. We conclude the arguments lack merit. The postjudgment order is affirmed.

I

We incorporate by reference our statement of the underlying facts, provided in greater detail in *Sanders I, supra*, G047997. Suffice it to say, Logan induced Joseph and Kathleen to invest money (the Trust's assets) in his real estate investment limited liability company and took a large share of the profits for himself.

Kathleen died in July 2006, and the following month Joseph resigned his position as trustee, appointing his two children, Nicholas and Leah K. Boyd as

---

[1]     "[W]e refer to the parties by their first names for purposes of clarity and not out of disrespect. [Citations.]" (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

co-trustees.  When Joseph died four years later in February 2010, Leah resigned as trustee, leaving Nicholas as the sole trustee.  Nicholas discovered Logan, his parent's financial planner, facilitated several different investments for the Trust.  When Nicholas attempted to investigate the status of those investments, Logan and the Company withheld much of the necessary information forcing Nicholas to file the underlying lawsuit and seek a full accounting.

The petition alleged six causes of action.  The first three requested an accounting and inspection of records, statutory damages, and the transfer of property back to the Trust pursuant to Probate Code sections 850 and 859.  The remaining claims alleged civil causes of action for (1) financial abuse of an elder or dependent adult (fourth cause of action), (2) deceit (fifth cause of action), and (3) breach of fiduciary duty (sixth cause of action).

The Trust sought to hold liable the following entities:  (1) Logan; (2) the Company; (3) Statewide Barstow, LLC; (4) Statewide Barstow II; (5) Statewide Ministorage LLC., (6) Statewide Ministorage/Barstow, LLC; (7) ISP/Jurupa, LLC; (8) Montrose Apple Valley, LLC; (9) Wealth Management Resources, Inc. (WMR); and (10) Capital Financial Consultants, Inc.  At trial, the Trust dismissed all the defendants except Logan and the Company.

After considering the evidence and briefing from the parties the court ruled in favor of the Trust.  In its statement of decision, the court explained it was necessary to discuss the background of the dispute "to appreciate the factual and legal difficulties presented by this case."  The court explained the petition was filed by Nicholas, the successor trustee and the initial trustors were both deceased.  It stated, "Beginning in 1995, or thereabouts . . . Logan had discussions with Kathleen and Joseph about investing the [T]rust's assets with Logan, which allegedly [they] did.  The Trust's assets were invested in various entities including limited liability companies [(LLCs)], corporations, and other entities.  Besides Logan, the other remaining [r]espondent is [the Company] of

3

which Logan is apparently the CEO, director, and sole shareholder. All other [r]espondents were dismissed."

The court noted the petition alleged Joseph and Kathleen invested at least $784,000 of Trust assets with Logan and Wealth Management Resources. It concluded, "The [c]ourt finds from the evidence presented that Logan and [the Company] 'took secreted, appropriated and/or retained real or personal property that belonged to Joseph and Kathleen as trustee and beneficiary of the Trust for a wrongful use or with intent to defraud.' [The court cited paragraph 83 of the petition's fourth cause of action.] Likewise, the fifth cause of action incorporates paragraph 83 [of the petition] and alleges that Logan suppressed information, failed to disclose information and mislead Joseph and the [Trust] in [six] different respects. In the sixth cause of action [the Trust] incorporates paragraph 83 as well as the preceding paragraphs and further in paragraph 96 that Logan 'breached his [f]iduciary [d]uties to the Trust by failing to account, refusing to provide documentation, investing the Trust's money in high risk investments, self-dealing with entities in which both Logan and the Trust had an economic interest, and self-dealing with entities for which Logan was a manager, officer, or agent, and in which the Trust had invested funds.' Based upon all of the evidence presented both testimonial and documentary, the court is satisfied that [the Trust] proved the allegations in the [fourth, fifth, and sixth] causes of action—the [fourth] cause of action by clear and convincing evidence."

In addition, the court commented the relationship between Logan and the Company was one and the same, stating, "Logan *was* [the Company] and the result was an abominable lack of documentation and record-keeping of [the Trust's] account without justification and in violation of [r]espondent's fiduciary duties to [the Trust.] [2]

---

[2] It is unclear if the trial court trial court's reference to "respondent" in this sentence was referring to Logan or the Company, and consequently we have left the court's ruling as written.

As a result the [c]ourt's decision is that [the Trust] proved economic damages of $207,220.79 and is entitled to [j]udgment on the [fourth, fifth, and sixth] causes of action as well as attorney fees. [¶] In the event [r]espondents satisfy the judgment in part or in whole, the distribution shall be applied to reduce [the Trust's] interest in [the Company] but in no event below zero." (Italics added.)

The following month, the Trust filed a motion for attorney fees and costs on the grounds it was the prevailing party in the elder abuse claim (Welf. & Inst. Code, § 15657.5, subd. (a)),[3] and because the Company failed to comply with record inspection rights as required by the Corporations Code. The Trust requested $158,946, supported by the declaration of its attorney, Robert Garretson. The Trust submitted copies of billing records (30 pages long) generated in the case and explained the Trust was billed on a hourly basis. Garretson requested an additional $2,600 for preparing the attorney fee motion (eight hours at his billing rate of $325 per hour).

Logan filed an opposition arguing, inter alia, the fees were not reasonable because the bills included work done litigating against the defendants ultimately dismissed from the lawsuit. He asserted a reasonable fee would require an equal allocation of time spent between the various defendants up to the time of trial, and calculated those fees would be $77,430.80. The Company separately filed an opposition, raising the same contentions.

The Trust filed a reply arguing, inter alia, the fees were reasonable because it "received the total amount of compensatory damages it sought during trial, that the facts, evidence and work needed were [*sic*] the same for all the causes of action, and the reason that [the Trust] included multiple entities because [Logan and the Company's] 'abdominable lack of documentation and recordkeeping' made it impossible to determine

---

[3] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

5

what entities were responsible. [(Citing the court's January 9, 2013, statement of decision.)]." The Trust explained the legal fees should not be reduced because it pursued multiple causes of action (some of which did not provide for attorney fees) and "the work was the same of any of the legal theories." In addition, the Trust reasoned the inclusion of multiple defendants was necessary and did not significantly increase the costs. It noted many of the entities had similar names and the attorney fees related to determining who received funds because the Company's records were inadequate in this regard. Logan provided documentation right before the trial date enabling the Trust to finally determine which entities were responsible and which ones could be dismissed. Finally, the Trust argued the requested fees were reasonable and necessary.

A few days before the scheduled hearing, the court issued a minute order asking the Trust to supply supplemental briefing. The order provided, "[The Trust] is to submit additional information to the [c]ourt that breaks down the fees sought by the number of hours spent by each attorney and paralegal with his or her billing rate. [The Trust] is to also submit information about each attorney to justify his or her billing rate." The Trust filed a supplemental motion addressing the court's concerns. Garretson provided more detailed information about the credentials, hours worked and billing rates regarding himself and several attorneys in his firm who also worked on the case (Chadwick Bunch, Casey Kempner, Jerad Belz, and paralegal Joann Bales).

The court held a hearing and took the matter under submission. It granted the motion awarding $156,346 in attorney fees and $5,171.30 in costs. It did not award the Trust for the fees generated to file the motion. It ordered the clerk to amend the judgment filed on January 10, 2013, to include the attorney fee and cost award.

II

A. *Prevailing Party*

Logan and the Company first allege that if they prevail on appeal in *Sanders I, supra*, G047997, the attorney fee award must also be reversed. As indicated

6

above, we reversed the judgment only as to the Company. The judgment against Logan was affirmed. The Trust, as the prevailing party, may recover fees against Logan, but not the Company.[4]

*B. Reasonable Fees for Financial Elder Abuse*

As the prevailing plaintiff in a financial abuse case, the Trust was statutorily entitled to recover its reasonable attorney fees: "Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse . . . the court shall award to the plaintiff *reasonable* attorney's fees and costs. The term "costs" includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article." (§ 15657.5, italics added.)

Logan argues the attorney fees awarded were excessive the court relied on improper criteria when making the award. We disagree.

An attorney fees award is reviewed for abuse of discretion. (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233.) Abuse of discretion will be found only when it is shown there was no reasonable basis for the trial court's action. (*Ibid.*) "'[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.) "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion. [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).)

The trial court is not required to issue a statement of decision addressing disputed legal and factual issues when ruling on a motion for attorney fees. (*Rebney v.*

---

[4]     In addition, because we conclude fees were warranted and reasonable under the financial elder abuse statutory scheme, we need not provide a dicta opinion about whether fees were also recoverable under Corporations Code.

*Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349.)  "No specific findings reflecting the court's calculations [are] required.  [Citation.]  'The record need only show that the attorney fees were awarded according to the "lodestar" or "touchstone" approach.'  [Citation.]  On appeal we infer all findings in favor of the prevailing parties.  [Citation.]"  (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.)

"[T]he lodestar method requires the trial court to first determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney.  [Citations.]  The trial court may then augment or diminish the touchstone figure by taking various relevant factors into account.  [Citations.]"  (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 445-446; see *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49.)

The record reflects the trial court engaged in the appropriate lodestar method in fashioning the attorney fees award.  The Trust's motion was accompanied by two declarations from attorney Garretson and billing statements detailing the number of hours expended by each attorney and paralegal who worked on this case, the experience of each, and the billing rate of each.  The moving papers contained a graph clearly demonstrating the number of hours worked at hourly rates ranging from $185 for the paralegals to $325 for associates, for a total amount of $156,346.  We can infer the court determined the hourly billing rates and total number of hours worked (502.7) were reasonable because it did not augment or diminish the amount requested.

Logan contends the award must be reduced because it is obvious the court "did not satisfy its duty to review the invoices submitted to determine the hours reasonably spent."  (Italics omitted.)  He explains fees related to inefficient or duplicative efforts are not subject to compensation.  (Citing *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [court must carefully review documentation of hours expended, looking for "'padding'"].)  We agree the trial court has a duty to review the documents.  However, Logan fails to explain why he believes the court breached this duty.  We

8

consider the point waived because his argument is devoid of any reasoned legal analysis or citation to authorities. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [same].) And, in any event, it can reasonably be inferred from the court's request for supplemental briefing that it reviewed the billing statements and noticed there were entries for several people not mentioned in the original motion for attorney fees, and there was no information about their hourly rates. The Trust supplied the information missing from the billing statements. We must presume the court performed its duty to examine the evidence submitted.

Logan also contends the court failed to satisfy its duty "to apportion the fees and costs between those causes of action for which statutory fees are permissible and those in which they are not." (Italics and underline omitted.) He asserts a litigant may not increase his recovery of attorney fees by joining a cause of action in which attorney fees are not recoverable. Logan relies primarily on *Bell v. Vista Unified School District* (2000) 82 Cal.App.4th 672 (*Bell*), but the case is inapt.

Plaintiff in *Bell* alleged four causes of action relating to violation of the Brown Act (for which statutory attorney fees were available) and 11 causes of action related to various torts, including wrongful termination. (*Bell, supra,* 82 Cal.App.4th at p. 687.) The majority of claims for damages did not carry attorney fees. Nevertheless, after Plaintiff prevailed on his Brown Act claim and tort causes of action, the court awarded attorney fees on all causes of action. The appellate court found the award was an abuse of discretion, stating, "Although the Brown Act violation may have procedurally facilitated the wrongful termination or retaliatory firing, it did not substantially beget it. Simply stated, they constitute two separate and distinct claims, one entitled to statutory fees and the other not." (*Id.* at p. 688.) The court also noted plaintiff's counsel made candid admissions that suggested the fees could be apportioned between the Brown Act

9

violations and the tort actions. (*Id*. at p. 689.) And the billing statements showed most of the attorney's time was spent on the nonstatutory claims.

In this case there was not a distinct boundary between the elder abuse claim and the other causes of action. All the causes of action centered on the same facts and allegations of misconduct. It appears the work on the case proceeded concurrently on all causes of action and there is no basis for parsing out hours spent only on the elder abuse claim that were unrelated to the other claims. As acknowledged by the court in *Bell,* "Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units. [Citations.]" (*Bell, supra,* 82 Cal.App.4th at p. 687.)

We also reject Logan's assertion the court abused it discretion by failing to apportion the fees and costs between the party the Trust prevailed against (Logan) from fees relating to parties whom the Trust did not prevail. The two cases cited by Logan to support his contention both hold the court has "broad discretion" to apportion fees. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 443 (*Zintel*); *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1297-1298 (*Heppler*).)

For example, in the *Zintel* case, the court determined it was an abuse of discretion to not apportion attorney fees between the two tenants represented by counsel. In that case, the landlord brought an action against two tenants. (*Zintel, supra,* 209 Cal.App.4th at pp. 442-443.) The tenant who filed a cross-complaint was not entitled to contractual attorney fees, but other tenant who did not cross-complain was entitled to fees. The court refused to award any fees, refusing to exercise its discretion and apportion the fees between the tenants. (*Id.* at p. 443.) The matter was remanded to permit the trial court to determine the reasonable amount of fees to which one tenant was entitled. (*Id.* at p. 444.)

10

The other case cited by Logan also does not assist him. In *Heppler,* the plaintiffs sued a contractor, who cross-complained against four subcontractors for construction defects. (*Heppler, supra,* 73 Cal.App.4th at p. 1273-1274.) The trial court awarded plaintiffs all their requested attorney fees against one subcontractor, Martin, pursuant to a contract provision. The appellate court concluded this was an abuse of discretion, stating, "Martin's part of the case could have been tried in considerably less time than seven weeks had the trial not taken up issues that involved the other nonsettling subcontractors. It strikes us as eminently unfair to tag Martin with all of plaintiffs' attorney fees for the entire seven-week trial. [¶] . . . [¶] Not all the issues involving Martin's case were integrally associated with the other issues in the case; at the very least, some of them could have been severed and isolated for purposes of the attorney fees award." (*Id.* at p. 1297.)

In both *Zintel* and *Heppler,* it was clearly possible to identify attorney fees expended unrelated to the prevailing party's attorney fees. In *Zintel,* the court determined the award could be apportioned so as to not include those incurred in pursuing the cross-complaint. (*Zintel, supra,* 209 Cal.App.4th at pp. 442-443.) In *Heppler,* the court determined the trial would have been shorter and involved less issues without the four subcontractors. (*Heppler, supra,* 73 Cal.App.4th at p. 1297.) The same cannot be said in this case. The trial court reasonably concluded the work reflected in the billing statements applied regardless of whether there was one or nine defendants. This is because all the defendants were initially entities or companies that appeared to be controlled by or used by Logan in his one deceitful scheme. And although a small sum of additional fees might have been incurred to sort out the status of these entities, the court could reasonably conclude these fees should be included because they were directly caused by Logan's failure to timely disclose the requested information. Given Logan's failure to provide the Trust with adequate records, and the inextricably intertwined issues

11

shared by the Trust's causes of action, we conclude it would be impractical, if not impossible, to separate the Trust's legal team's activities into compensable and non-compensable fees.  Under the circumstances, it cannot be said the court's fee award was an abuse of its discretion.

And finally, Logan argues it should not have taken the Trust's attorney's 49 hours to prepare and serve the complaint.  Just because Logan believes it should take less time, does not prove the bill was padded, or more importantly that the court abused its discretion.  As stated above, "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." (*PLCM Group, supra,* 22 Cal.4th at p. 1095.)  We consider Logan's contention waived because his argument is devoid of any reasoned legal analysis or discussion of the relevant case law.  (See *Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

### III

The postjudgment attorney fee order is affirmed.  Respondent shall recover his costs on appeal.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.


12