Filed 9/15/23  Elation Systems v. Fenn Bridge CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ELATION SYSTEMS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FENN BRIDGE LLC et al., <br><br> Defendants and Respondents. | A165762 <br><br> (Alameda County <br> Super. Ct. No. RG15758321) |

In this action, Elation Systems, Inc. (Elation) claims its former employee, Tiebio Shi, misappropriated Elation's confidential source code, trade secrets, and other proprietary business information, and used them in his competing businesses, Efen Bridge and its successor, Fenn Bridge LLC (Fenn Bridge).  After entering into an agreement to settle prior litigation, the parties filed suit against one another alleging, among other things, breach of the settlement agreement.  A jury found that Shi was liable for breach of a nondisclosure agreement (NDA) with Elation, and that Fenn Bridge and Shi (collectively respondents) were liable for breach of the settlement agreement. The trial court granted respondents' motion for judgment notwithstanding the verdict (JNOV), declared respondents to be the prevailing parties in the case, and awarded them $700,000 in contractual attorney fees.

In a prior appeal, we reversed the grant of JNOV on the breach of NDA claim, holding the trial court should have awarded Elation nominal damages

1

in light of the jury's finding that Shi breached the NDA. (*Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965–966 (*Elation*).) We also held that Civil Code section 1717,[1] which makes a contractual attorney fee provision reciprocal in any action on the contract, applied to the breach of settlement agreement claim and cross-claim, but not to the breach of NDA claim. (*Elation Systems, Inc. v. Fenn Bridge LLC* (Nov. 22, 2021, A159749, A160823) [nonpub. portion of partially pub. opn.].)[2] Accordingly, we vacated the award of attorney fees and remanded for reconsideration "of whether and to what extent fees should be apportioned" between the contract and noncontract claims. (*Elation*, at p. 968.)

Elation challenges the trial court's subsequent order and amended judgment awarding respondents the original $700,000 in attorney fees plus an additional $150,000 in appellate and postjudgment attorney fees. Elation contends the court abused its discretion when it refused to apportion fees between the contract claims and noncontract claims. We find no error in the court's refusal to apportion attorney fees between the breach of settlement agreement claim and cross-claim on the one hand, and Elation's claims for breach of the NDA and misappropriation of trade secrets on the other, as the court reasonably concluded the issues were so interrelated that it was impossible to separate the work on these claims into compensable and noncompensable time units. However, we conclude the court erred in refusing to apportion out fees incurred on respondents' fraud cross-claims, as

---

[1]    Further statutory references are to the Civil Code unless stated otherwise.

[2]    We take judicial notice of the nonpublished portions of the *Elation* opinion. (Evid. Code, §§ 452, subd. (d), 459; *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171 [court may take judicial notice of prior nonpublished opinion in related appeal].)

2

respondents were not the prevailing parties on these noncontract claims, and the evidence submitted on the fee motion demonstrated that apportionment was possible. Accordingly, we reverse the amended judgment in part and remand for apportionment of the attorney fees incurred on respondent's fraud cross-claims.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Shi was employed by Elation as a software developer from 2005 to 2011. His duties included building and modifying Elation's " 'Labor Compliance Program' " (LCP) software, which helps to automate reporting, monitoring, and compliance with federal and state-specific prevailing wage laws for public works projects.[4]

## A. Nondisclosure and Confidentiality Agreement

As part of his employment with Elation, Shi signed an NDA in 2005. Under paragraph 3 of the NDA, Shi agreed "to hold all Confidential Information in strict confidence and secrecy and not to disclose to others or to use" the information, and to make "no copies of Confidential Information" except upon Elation's written authorization. Paragraph 5 of the NDA provided that all copies of such information must be returned upon Elation's request. The NDA also provided that in addition to all other rights and remedies available at law, in equity, or otherwise, either party had the right

---

[3] We derive the factual background from our decision in the prior appeal (*Elation*, *supra*, 71 Cal.App.5th at pp. 961–963), the record in the present appeal, and portions of the record from the prior appeal, which we incorporate into the record here. (See *People v. Nettles* (2015) 240 Cal.App.4th 402, 406, fn. 2.)

[4] During the proceedings below, Elation generally described its alleged trade secrets as including a " 'built-in process' for utilizing a 'single workflow' " or a " 'unique electronic workflow method' that simplifies the electronic signature process."

to seek specific performance of the provisions in paragraph 3 to enjoin a breach or attempted breach. The NDA did not contain an attorney fee provision.

In April 2011, Shi left his employment at Elation and formed a business entity called Efen Bridge.

**B. Prior Action, Settlement Agreement, and Stipulated Injunction**

In August 2011, Elation sued Shi and Efen Bridge (Alameda County Super. Ct. case no. RG11593133) for breach of the NDA, misappropriation of trade secrets, and unfair competition, alleging that Efen Bridge was attempting to market software products that were substantially similar, if not identical, to those developed, marketed, and sold by Elation. Elation further alleged that before leaving Elation, Shi replicated Elation's source code on his company-issued laptop and transferred it using a "Universal Serial Bus" (USB) drive and/or a file transfer protocol program.

The parties entered into a settlement agreement to resolve the prior lawsuit (hereafter the Settlement Agreement). The Settlement Agreement set forth a three-part process for inspection of Efen Bridge's LCP. First, Elation would review Efen Bridge's LCP as it existed at the time of settlement. If Elation identified any of its alleged trade secrets or confidential information, Efen Bridge could not use that LCP but could create a new LCP "from scratch." Elation would then keep a copy of Efen Bridge's original LCP on a USB drive, and Efen Bridge and Shi would be required to "delete or destroy all copies" of its original LCP within one day after the inspection. Second, Elation would be permitted to re-inspect Efen Bridge's LCP once it was completed "to the level of" the original version. Third, upon Efen Bridge's notice of its first sale of the new LCP product to a customer, Elation would be permitted to compare Efen Bridge's "then-current working

4

LCP product with the archived product stored in confidence with Elation's attorney" on the USB drive. Efen Bridge and Shi were required to "delete or destroy" any confidential information or code obtained from Elation by September 26, 2011. The Settlement Agreement stated that each party would be responsible for its own costs and legal expenses in connection with the lawsuit, the dismissal of the lawsuit, and the negotiation, execution, and performance of the Settlement Agreement.

In the event of a violation, Elation would receive liquidated damages of $10,000 per violation without a showing of harm, and Efen Bridge and Shi would stipulate to the entry of an injunction "held by counsel for Elation and not filed unless and until there is a default in the obligations" outlined in the Settlement Agreement. The proposed stipulated judgment and injunction (hereafter Stipulated Injunction) was attached as an exhibit to the Settlement Agreement and provided that Efen Bridge and Shi would be enjoined "from keeping, using, disclosing, threatening to use or disclose, or misappropriating [Elation's] alleged trade secrets" as identified in the Stipulated Injunction, as well as Elation's "alleged confidential and proprietary information in breach of Defendant Shi's" NDA.

Unlike the NDA and Settlement Agreement proper, the Stipulated Injunction contained an attorney fee provision in which Efen Bridge and Shi "agree[d] to pay Elation all costs, including without limitation attorneys' fees, incurred by Elation in connection with entry and enforcement of this Stipulated Injunction, including without limitation all costs, attorneys' fees and expenses incurred by Elation in connection with any bankruptcy, reorganization, arrangement or other similar proceedings involving Defendant Shi or Efen Bridge which may in any way affect the exercise by Elation of its rights and remedies hereunder."

5

## C. Elation's Complaint

In February 2015, Elation sued Shi and Fenn Bridge, alleged successor entity to Efen Bridge. Elation's operative second amended complaint asserted four causes of action: (1) breach of the NDA (against Shi); (2) breach of the Settlement Agreement (against respondents); (3) violation of the California Uniform Trade Secrets Act (CUTSA) (Civ. Code, § 3426 et seq.) (against Fenn Bridge); and (4) declaratory relief (against respondents).

Elation alleged that in October 2011, it conducted the first inspection contemplated by the Settlement Agreement and identified instances where Shi had copied Elation's software. Accordingly, respondents were obligated to destroy any and all copies of their original LCP and start again from scratch. Upon notice that Fenn Bridge had rebuilt its LCP, however, Elation declined its option to conduct the second inspection. Then, in January 2015, Fenn Bridge provided notice of its first customer sale, triggering the option for Elation to conduct the third inspection. The parties, however, disagreed about what was required for this inspection: Fenn Bridge stated it would provide a copy of its LCP on a laptop, but Elation wanted " 'an actual working version of its product that is being implemented with a customer.' "

In the first cause of action for breach of the NDA, Elation alleged that Shi retained and used Elation's confidential information in violation of the NDA, including Elation's customer list, employee list, contact list, and user database, and that Fenn Bridge later sent mass emails to a customer list, user contact list, or user database that unlawfully included confidential and proprietary business information of Elation. Elation sought actual damages and specific performance of the NDA's provisions requiring Shi to return copies or samples of Elation's confidential information in his possession.

6

In the second cause of action for breach of the Settlement Agreement, Elation alleged that Fenn Bridge was the successor and/or assign to Efen Bridge, and that respondents breached the Settlement Agreement by failing to return or destroy all customer lists, functions, routines, processes, databases, or code from Elation, and refusing to allow the third inspection of Fenn Bridge's LCP product "actually sold to a customer and as being implemented by a customer."

The third cause of action under the CUTSA was asserted as an alternative basis for liability against Fenn Bridge in the event Fenn Bridge was not found to be a successor or assignee of Efen Bridge. Elation alleged that Fenn Bridge was liable under the CUTSA for conspiring with Shi to misappropriate "Elation's confidential and proprietary trade secret information."

In the declaratory relief claim, Elation sought a "judicial determination of its rights and duties" under the Settlement Agreement, specifically that it was "entitled to inspect a working copy of Fenn Bridge's LCP product that was actually sold to and as it is being implemented by a customer."

### D. Fenn Bridge and Shi's Cross-Complaint

Respondents meanwhile filed a cross-action against Elation. In the operative second amended cross-complaint, respondents' first cause of action for breach of the Settlement Agreement alleged that Elation breached its promises to preserve the USB drive containing a copy of Fenn Bridge's LCP product as it existed in 2011 and to return the USB drive and software at the completion of the inspection process.

In their second cause of action for "Fraud—Failure to Disclose Lost Evidence," respondents alleged that Elation was aware the USB drive containing the archived software could not be found as early as January

7

2012, but instead of disclosing the loss at that time, Elation actively concealed the loss until May 2016. Elation allegedly intended to keep Fenn Bridge unaware of the drive's loss so that Fenn Bridge would continue to comply with the Settlement Agreement, but respondents alleged that had Fenn Bridge known the drive was lost, it would have moved to dismiss the case based on impossibility of performance or sued to invalidate the inspection provisions of the Settlement Agreement.

In the third cause of action for "Fraud—False Promise," respondents alleged that by signing the Settlement Agreement, Elation implied its intention to fully comply with its terms, including the promise to follow the inspection procedures. However, Elation allegedly never intended to comply with its promise to work with Fenn Bridge through the inspection process to ensure that any offending material was removed, and Elation never attempted to inspect the software pursuant to the Settlement Agreement, thereby depriving Fenn Bridge of guidance in developing trade-secret-free software.

### E. Pretrial Law and Motion Matters

Elation calls our attention to various pretrial motions filed by the parties in the proceedings below. We summarize the relevant motions and the trial court's rulings.

#### 1. Elation's Motions

Early in the litigation, Elation moved to compel further discovery responses from respondents. The trial court granted the motion in substantial part, rejecting respondents' objections that Elation's discovery requests were " 'premature and improper' " because Elation failed to identify the alleged trade secrets at issue with reasonable particularity.

8

Elation also challenged respondents' fraud cross-claims. Elation demurred to the fraud/false promise claim in the first amended cross-complaint on the ground that the claim was not pled with sufficient particularity, and the trial court sustained the demurrer with leave to amend. After respondents filed their second amended cross-complaint, Elation again demurred to the fraud/false promise claim, but this time, the demurrer was overruled.

Elation later moved—successfully—for summary adjudication of respondents' claim for fraud/failure to disclose. The trial court found there was no triable issue of material fact on the element of intentional concealment with intent to defraud, as the undisputed evidence established that Elation's counsel was not aware of the missing USB drive before April 2016. Though respondents' fraud/failure to disclose claim was dismissed, their fraud/false promise claim remained intact.

## 2. Respondents' Motions

Respondents moved for judgment on the pleadings against the CUTSA claim in Elation's original complaint (which was asserted against both respondents) on the ground that the claim was "barred by the statute of limitations or by the 'Mutual Releases' provision of the" Settlement Agreement. The trial court granted the motion without leave to amend as to Shi, but with leave to amend as to Fenn Bridge. Although Fenn Bridge was not named in the prior lawsuit and was not a signatory to the Settlement Agreement, the court concluded the mutual release provision could extend to Fenn Bridge as a successor to Efen Bridge. Additionally, the court found that the CUTSA claim did not identify any alleged trade secret information used or disclosed by Fenn Bridge, and that the claim appeared to be time-barred.

After Elation filed the operative second amended complaint, Fenn Bridge moved for summary adjudication of the CUTSA claim, arguing the undisputed facts established that Fenn Bridge was indeed a successor of Efen Bridge. The trial court denied the motion, finding a triable dispute as to Fenn Bridge's status as successor to Efen Bridge.

**F. Trial**

A jury trial commenced in September 2019. For purposes of this appeal, we need not recount the trial evidence in detail. As relevant here, we note that on day two of trial, Elation stipulated that it had breached the Settlement Agreement when its former counsel lost the USB drive containing Efen Bridge's original LCP product.

After the conclusion of testimony, Elation moved for nonsuit on respondents' cross-claim for fraud/false promise, arguing there was no evidence of "any actual promises made." Respondent's counsel responded, "I have no argument, Your Honor," and the trial court granted nonsuit.

**G. Verdict**

On Elation's claim for breach of the NDA, the jury returned a verdict that Shi breached the contract and harmed Elation, but the jury initially awarded zero damages. After receiving additional instructions on damages, including an instruction on nominal damages, the jury awarded Elation $10,000.

On Elation's claim for breach of the Settlement Agreement, the jury found that Fenn Bridge and Shi had each breached one obligation under the Settlement Agreement by failing to do something they were required to do, but that Elation was not harmed by these breaches. The jury did not reach the question of Fenn Bridge's liability under CUTSA because it found that

Fenn Bridge was a successor in interest to Efen Bridge and was therefore liable under the breach of Settlement Agreement claim.

### H. Posttrial Motions

Following the jury verdict, Elation filed a motion for permanent injunctive and other relief. Elation argued that the conditions for entry of the Stipulated Injunction, which had been attached to the Settlement Agreement, were met because the jury had determined that Shi violated his NDA obligations and both respondents defaulted on their Settlement Agreement obligations. Based on the evidence at trial, Elation also argued that respondents still possessed Elation's confidential information, and thus " '[n]othing short of injunctive relief can protect Elation's interest.' "

Respondents meanwhile filed a JNOV motion challenging the jury's findings of harm and damages on Elation's NDA claim and its finding of breach on Elation's Settlement Agreement claim.

The trial court granted respondents' JNOV motion and denied Elation's motion for permanent injunction. As to the breach of NDA claim, the court found no evidence showing that "if not for [Shi's] misappropriation, [Elation] would have been awarded any contract or made any additional profits." The court also found no evidence supporting the $10,000 damages award. On the parties' competing breach of Settlement Agreement claims, the court found that Elation had "stipulated to its own prior breach" consisting of Elation's loss of the USB drive containing Efen Bridge's original LCP, which was the "exclusive version against which [respondents'] code could be compared for any future claims of misappropriation" and that "[t]he promise to maintain the USB drive was a material term of the 2011 settlement—without the drive, the parties' agreed regime for adjudicating future claims of misappropriation became impossible."

11

Respondents subsequently moved for attorney fees pursuant to section 1717 and the attorney fee provision in the Stipulated Injunction. Respondents sought a total award of $718,778.85, which were "all fees incurred in defending against the lawsuit," beginning with respondents' first appearance in the case and extending through trial. The trial court found that respondents were the prevailing parties on the operative complaint and cross-complaint, and that section 1717 was applicable, as the fees "were incurred in defending against Elation's attempt to enforce the stipulated judgment which was part of the 2011 settlement agreement." Finding that "[a]ll causes of action in the complaint were in actuality different legal theories directed to Elation's singular request to enforce the settlement agreement," the court entered judgment awarding Fenn Bridge and Shi $700,000 in attorney fees.[5]

## I. Prior Appeal

Elation appealed, and in a partially published opinion, this division reversed the judgment in part and remanded for further proceedings. We held that while the trial court correctly concluded that substantial evidence did not support the jury's finding that Elation was harmed by the breach of the NDA, the court should have awarded Elation nominal damages. (*Elation*, *supra*, 71 Cal.App.5th at p. 965.) Accordingly, we instructed the trial court to reconsider on remand Elation's motion for permanent injunctive and other relief. (*Id*. at p. 968.)

---

[5] The record does not disclose the trial court's basis for awarding respondents approximately $18,000 less than they requested. We note, however, that in the court's written judgment, it appears the court crossed out a paragraph that would have awarded respondents $16,780.00 for the amounts Fenn Bridge paid to counsel for third-party Anovo Systems, LLC (Anovo) under a purported "contractual duty of defense."

12

In the nonpublished portion of our opinion, we affirmed the grant of JNOV as to the breach of Settlement Agreement claim; held that attorney fees were available under section 1717 only for the parties' respective claims for breach of the Settlement Agreement and not for Elation's breach of NDA claim; vacated the award of $700,000 in attorney fees; and instructed the trial court to consider on remand "whether and to what extent" fees should be apportioned.  (*Elation*, *supra*, A159749, A160823 [nonpub. portion of partially pub. opn.].)

## J. Proceedings on Remand

In the aftermath of *Elation*, respondents moved for supplemental attorney fees, renewing their request for $700,000 in contractual attorney fees and seeking additional fees for postjudgment and appellate work. Elation opposed the motion, arguing that respondents were not the prevailing parties on appeal, and that apportionment of the fees was necessary because almost $500,000 of the amounts requested was unrelated to the claim and cross-claim for breach of the Settlement Agreement.

Elation meanwhile moved for entry of judgment in its favor on the breach of NDA claim, nominal damages of $1.00 for Shi's breach of the NDA, and a permanent injunction "pursuant to the 2005 NDA."

At the hearing on the fee motion, the trial court pressed Elation's counsel on how fees could be apportioned between the NDA and Settlement Agreement claims "when you presented the very same exact evidence to support both cases."  Elation's counsel explained they had presented color-coded versions of respondents' billing records highlighting the tasks related to the noncontract claims, such as entries categorized in the invoices as "Trade Secret Litigation," but the court responded that it "couldn't figure out why something that was itemized as trade secret litigation was different than

13

the evidence that was presented at court when it was the same evidence for both the nondisclosure agreement and the breach of the settlement after the first trade secret." The court further remarked, "I have to say that I heard the testimony. I heard the evidence. It's all—it was the same—very same evidence in both. And, in fact, for all the causes of action in the whole case, it was all the same body of evidence as to whether or not the one program was stolen from the other." Elation's counsel later conceded, "I hear you on what the evidence was presented at trial," but counsel attempted to shift the court's focus to "pretrial" matters, such as the "endless motion practice about whether or not a trade secret has been identified under CUTSA. Whether or not they had a fraud cross-claim." The court responded, "Well, it says, 'Trade secret litigation,' and the whole case was trade secret litigation."

After the hearing, the trial court issued a written order granting respondents' motion for attorney fees, awarding them the original $700,000 in fees plus $150,000 for their "subsequent attorneys' fees." The court expressly "decline[d] to apportion any of the $700,000.00 fees awarded to [respondents] prior to appeal" because it found "that the very same evidence was presented at trial for both the settlement agreement and NDA claims and, in fact, for all the causes of action in the whole case it was the same body of evidence which purported to . . . demonstrate culpability."

The trial court also denied Elation's motion for a permanent injunction, finding "it would be inequitable to grant an injunction based on the evidence in this case" because "[t]he jury did not identify the specific instance of breach and the Court is unable to discern at this time what particular act or acts of [respondents] should be enjoined." Finally, the court awarded Elation $1.00 in nominal damages for breach of the NDA.

14

Thereafter, the trial court issued an "Amended Judgment After Appellate Remand" in favor of respondents. The amended judgment provides that respondents "are entitled to their costs of suit as may be claimed with a properly filed memorandum of costs and are further entitled to an award of attorney fees, as a part of those costs" in the total amount of $850,000.

Elation timely appealed.

## DISCUSSION

### A. Governing Legal Principles on Apportionment of Contractual Attorney Fee Awards

A party may not recover attorney fees unless expressly authorized by statute or contract. (Code Civ. Proc., § 1021.) Where a contract provides for the award of attorney fees to only one party and not the other, section 1717 makes the provision reciprocal. Thus, in any action "on a contract" that provides for attorney fees, "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action. . . . A litigant may not increase his [or her] recovery of attorney's fees by joining a cause of action in which attorney's fees are not recoverable to one in which an award is proper." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 (*Reynolds*).) "[I]n such a situation the trial court should apportion the fees" and award only those incurred on the contract claim. (*Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 108.)

15

Various exceptions to this rule have been formulated in the case law. For instance, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds*, *supra*, 25 Cal.3d at pp. 129–130.)  Thus, in *Reynolds*, the Supreme Court held that an attorney fee award to the prevailing defendants did not have to be apportioned with respect to a dispositive issue of alter ego liability that was common to the plaintiff's claim for recovery under a promissory note containing an attorney fees provision and its claim for recovery under a general line consignment agreement that contained no fee provision.  (*Ibid.*; see also *Korech v. Hornwood* (1997) 58 Cal.App.4th 1412, 1422 (*Korech*) [apportionment not required for fees incurred on issues common to contract claim and mechanic's lien claim, as both "necessarily involved reviewing and analyzing the basic facts of the relationship between" parties, such as details of subcontract and work performed].)

Further, apportionment is not required "[w]hen the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133; see *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [apportionment unnecessary "where plaintiff's various claims involve a common core of facts or are based on related legal theories"].)  "For example, the holder of a note which provides for payment of fees incurred to collect the balance due is entitled to fees incurred in defending itself against 'interrelated' allegations of fraud." (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 (*Abdallah*), citing *Finalco, Inc. v. Roosevelt* (1991) 235 Cal.App.3d 1301, 1308 [noteholder's collection claim and defense of

debtor's cross-claims for fraud were " 'inextricably intertwined' "] and *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [factual interrelatedness of theories made it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units"].)

The refusal to apportion attorney fees may be justified when the prevailing party's time spent on the noncontract claim contributed to or was necessary to the success of the contract claim. (See *Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 623 (*Calvo*); see also *MRW, Inc. v. Big-O Tires, LLC* (E.D.Cal. 2010) 684 F.Supp.2d 1197, 1205.)

"[A]llocation is a matter within the trial court's discretion." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604.) "[A]s the one who has 'heard the entire case,' it is the trial court who is 'in the best position to determine whether any further allocation of attorney fees [i]s required or whether the issues were so intertwined that allocation would be impossible.' " (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 235 (*Cruz*).)

Nevertheless, " 'trial courts must carefully review attorney documentation of hours expended' " (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1330) and, when faced with the question of apportionment, must assess "the interplay between the . . . various claims [and parties], the evidence offered at trial, and the reasonableness of the time spent on various aspects of the [prevailing party's] trial presentation." (*Id.* at p. 1332.) A trial court abuses its discretion when it makes no attempt to apportion fees. (See, e.g., *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 444 (*Zintel*) [court failed to exercise its discretion on apportionment]; *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 689 (*Bell*) [trial court did not "endeavor[]" to apportion fees]; *Heppler v. J.M. Peters Co.* (1999) 73

17

Cal.App.4th 1265, 1297–1298 [trial court erroneously failed to apportion fees between claims against subcontractor whose contract had attorney fee provision and those against subcontractors without contractual fee provisions].) Depending on the circumstances, "a court may 'apportion fees even where the issues are connected, related or intertwined.' " (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 586.)

With these authorities in mind, we turn to Elation's contentions on appeal.

### B. The $700,000 Attorney Fee Award

Elation argues that the trial court abused its discretion by refusing to apportion the $700,000 attorney fee award between the contract and noncontract claims because the record demonstrated there were substantial billing entries unrelated to the breach of Settlement Agreement claim and cross-claim, and these fees could have been segregated based on a simple review of the invoices. We agree in part.

As we held in the nonpublished portions of the *Elation* decision, Elation's claim for breach of the Settlement Agreement was "on a contract" providing for attorney fees because Elation sought entry and enforcement of the Stipulated Injunction, which contained a one-way attorney fee provision in favor of Elation. (*Elation, supra,* A159749, A160823 [nonpub. portion of partially pub. opn.].) The same goes for respondents' cross-claim against Elation for breach of Settlement Agreement. Under section 1717, the one-way fee provision applied reciprocally to respondents as the parties prevailing on these contract claims. (§ 1717, subd. (a).)

We also held that Elation's claim for breach of the NDA was not a claim "on a contract" providing for attorney fees because the NDA did not contain an attorney fees provision. (*Elation, supra,* A159749, A160823 [nonpub.

18

portion of partially pub. opn.].) We reach the same conclusion for Elation's CUTSA claim, which arises out of statute, not contract.[6] (See *Silvaco Data Systems v. Intel. Corp.* (2010) 184 Cal.App.4th 210, 216 [trade secrets misappropriation claims did not sound in contract], disapproved on other grounds in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.) Likewise, respondents' cross-claims for fraud were not "on a contract" for purposes of section 1717. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 828 [tort claim is not "on a contract"].) Accordingly, because the trial court was presented with a request for attorney fees incurred on both contract and noncontract claims, it was required to apportion the fees unless an exception to the apportionment rule applied. (*Reynolds*, *supra*, 25 Cal.3d at pp. 129–130.)

We conclude the trial court did not abuse its discretion in declining to apportion fees between the contract claims and Elation's NDA and CUTSA claims. All of these claims shared common facts regarding Shi's prior employment with Elation, his role as a software developer on Elation's LCP product, his alleged misappropriation and use of Elation's source code and other confidential proprietary and business information at Efen Bridge and Fenn Bridge, and the development of Efen Bridge/Fenn Bridge's competing LCP product. Because the claims all involved investigating, reviewing, and analyzing the relationships of the parties and the same liability-causing events, the court acted within its discretion not to apportion attorney fees on

---

[6]  The CUTSA provides for the award of reasonable attorney fees where "a claim of [trade secret] misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists." (Civ. Code, § 3426.4.) Notably, the trial court denied respondents' motion for attorney fees based on their argument that Elation prosecuted its CUTSA claim in bad faith.

these common matters.  (See *Reynolds*, *supra*, 25 Cal.3d at pp. 129–130; *Korech*, *supra*, 58 Cal.App.4th at p. 1422.)

It was also within the bounds of reason for the trial court to conclude that the issues between the contract claims and Elation's NDA and CUTSA claims were so inextricably intertwined that it was " 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units.' " (*Abdallah*, *supra*, 43 Cal.App.4th at p. 1111.)  The trial court was best positioned to assess the commonality of the evidence presented at trial and determine whether it could be differentiated for fee allocation purposes, and we must defer to the trial court's view of the evidence in this regard.  (See *Cruz*, *supra*, 57 Cal.App.5th at p. 235.)

Moreover, our review of the record supports the trial court's finding of substantial overlap between the contract claims and Elation's NDA and CUTSA claims.  Elation's claim for breach of the Settlement Agreement was squarely predicated on Shi's acts and omissions constituting breaches of the NDA, as well as respondents' failure to comply with their Settlement Agreement obligations to delete or destroy "any customer lists, functions, routines, processes, database or code" that Shi acquired or created while employed by Elation.  The CUTSA claim against Fenn Bridge was simply an alternative basis for liability due to the fact that Fenn Bridge was not a signatory to the Settlement Agreement.  The Stipulated Injunction, which the parties crafted as a remedy for respondents' breach of the Settlement Agreement, specifically sought to enjoin respondents from "interfer[ing] with [Elation's] contractual advantage with Defendant Shi in the form of its [NDA], dated November 2, 2005," and from "keeping, using, [and] disclosing" any of Elation's "confidential information or trade secret information" already in their possession.  To that end, the Stipulated Injunction described the

20

same trade secret processes that Elation identified in support of its CUTSA claim. In light of this substantial overlap of issues, the trial court reasonably found that respondents' defense to entry and enforcement of the Stipulated Injunction also entailed a defense to the underlying allegations of breach of the NDA and violation of CUTSA that purported to justify the injunctive relief.[7]

Elation nevertheless maintains the trial court erred by focusing on the evidence presented at trial and ignoring the hours incurred on noncompensable pretrial matters that "were easily segregated out if the Superior Court had reviewed the invoices." In support of this argument, Elation highlights the number of hours incurred by respondents' counsel on various "hybrid" matters—e.g., Elation's inspection of respondents' LCP program, expert discovery, and the pretrial mandatory settlement conference—and contends the court should have limited the fee award to a percentage of the hours attributable only to the breach of Settlement Agreement claim and cross-claim. We are not persuaded, as abuse of discretion is not shown "by merely arguing that a different ruling would have been better. Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) In light of the substantial interrelation of issues discussed above, Elation fails to demonstrate that the court exceeded the bounds of reason in rejecting the feasibility of a simple percentage-reduction approach.

---

[7] Our conclusion is not inconsistent with *Elation*'s holding that the breach of NDA claim was not "on a contract" providing for fees, as we left it to the trial court to determine on remand "whether . . . fees should be apportioned" between the contract and noncontract claims. (*Elation*, *supra*, 71 Cal.App.5th at p. 968.)

Elation also highlights the hours that respondents' counsel incurred on discovery matters regarding third-party Anovo and argues that because this discovery related solely to Elation's lost profits in support of its breach of NDA claim, these discovery fees should not have been awarded. But Elation points us to nothing in the record supporting its contention that all of the fees incurred in connection with discovery from Anovo were related exclusively to the issue of lost profits. Simply put, Elation fails to provide an adequate record to show error in this regard. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Elation further contends that apportionment of the CUTSA-related fees could have been accomplished by disregarding all entries designated "Trade Secret Litigation" in the billing records. But the trial court reasonably rejected this approach, as the task descriptions under the entries marked "Trade Secret Litigation" did not consistently (or even predominantly) correspond to matters unique to the CUTSA.[8] Moreover, for the reasons discussed, the trial court reasonably concluded that due to the significant interrelation of issues, the work incurred in defense of the CUTSA claim was also attributable to respondents' defense to the Stipulated Injunction, making it infeasible to apportion fees between the claims. (See *Abdallah*, *supra*, 43 Cal.App.4th at p. 1111.)

---

[8] We highlight a few examples of many. One entry designated "Trade Secret Litigation" described the task of "[c]ommunicat[ing] with client re: software inspection issues." As software inspection was a key part of the process contemplated by the Settlement Agreement, this task was related to the breach of Settlement Agreement claims. Other entries designated "Trade Secret Litigation" described "[r]esearch[ing] issues related to loss of USB drive, and develop[ing] strategy based on the review" and "[d]raft[ing] and revis[ing] draft letter to opposing counsel re: loss of USB drive." The loss of the USB drive was, of course, the primary basis for respondents' breach of Settlement Agreement cross-claim.

22

In sum, we find no abuse of discretion in the trial court's refusal to apportion out the fees incurred on the NDA and CUTSA claims.

We reach a different conclusion for respondents' fraud cross-claims. Respondents were not the prevailing parties on these noncontract claims yet were awarded all of their associated fees.[9] (See § 1717, subd. (a) [reciprocity applies to "prevailing" party in action "on a contract"].) While the fraud cross-claims shared common facts with the parties' respective breach of Settlement Agreement claims, the matters were not so intertwined that apportionment was impossible. (*Abdallah*, *supra*, 43 Cal.App.4th at p. 1111; see *In re Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 586 [fees may be apportioned even where issues are connected, related, or intertwined].) The billing records submitted on the fee motion delineated motion work that could only have related to the fraud claims, and the legal issues raised in those matters were often unique to fraud, e.g., pleading fraud with particularity, the existence of a triable issue of material fact on intent to defraud. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [elements of fraud], 645 [particularity requirement for pleading fraud]; see *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 250 [prevailing party not entitled to fees for litigating issues "unique to" noncontract claim]; *Korech*, *supra*, 58 Cal.App.4th at p. 1422 [fees "clearly identified as having to do with" noncontract claim were properly deducted].) Because Elation's challenges to the fraud claims were made in separate and freestanding motions, the issues raised therein were not inextricably intertwined with work on other claims. Respondents do not contend, and we do not find, that

---

9    Because the trial court expressly "decline[d] to apportion any of the $700,000.00 fees," we cannot infer that the trial court's award of roughly $18,000 less than requested by respondents corresponded to a reduction of fees incurred on the fraud cross-claims. (See *ante*, fn. 5.)

23

the fraud cross-claims contributed or were necessary to their success on the contract claims.[10] (See *Calvo, supra*, 234 Cal.App.4th at p. 623.) Given the undisputed feasibility of apportioning out fees incurred on respondents' wholly unsuccessful fraud cross-claims, the trial court's refusal to exercise its discretion to apportion these fees constituted error. (See *Zintel, supra*, 209 Cal.App.4th at p. 444; *Bell, supra*, 82 Cal.App.4th at p. 689.)

Respondents maintain that Elation was not prejudiced by any such error because the trial court awarded $50,000 less than the total amount requested across the two fee motions, and this " 'haircut' " offset any argument that Elation suffered a miscarriage of justice. We disagree. First, it appears that respondents' $50,000 figure includes roughly $32,000 that the court declined to award for postjudgment work. This reduction is irrelevant to our examination of prejudice flowing from the court's error in failing to apportion *pretrial* fees incurred on the fraud cross-claims. Second, to the extent the purported " 'haircut' " includes the $16,780 amount stricken from the original judgment (see *ante*, fn. 5), this has no bearing on whether Elation was prejudiced by the court's failure to apportion and omit additional amounts for the fraud-related cross-claims.

In sum, we conclude the trial court prejudicially erred in failing to apportion out attorney fees for respondents' unsuccessful fraud cross-claims. Accordingly, we will reverse the amended judgment in part and remand with an instruction to the trial court to apportion the fees in the first instance. Having so concluded, we need not reach Elation's arguments on how the trial

---

[10] Indeed, as recounted earlier, respondents' claim for fraud/failure to disclose was dismissed on summary adjudication long before trial, and their claim for fraud/false promise was dismissed on Elation's unopposed motion for nonsuit because respondents presented "no evidence" of a false promise at trial.

24

court should have apportioned time entries relating to the cross-complaint as a whole. The trial court retains broad discretion to use any reasonable method of apportionment where the billing records and supporting declarations on the fee motion prove unhelpful. (See, e.g., *Bell*, *supra*, 82 Cal.App.4th at p. 689 [where billing entries rendered it "virtually impossible" to apportion hours on task-by-task basis, "trial court should exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside"].)

### C. The $150,000 Appellate and Postjudgment Fee Award

Elation further contends the trial court abused its discretion in awarding respondents $150,000 in appellate and postjudgment attorney fees. We find no merit in Elation's contentions.

Elation first argues that respondents were not entitled to appellate attorney fees because they were not the prevailing parties on appeal, as evidenced by this court's order in *Elation* that the parties bear their own costs on appeal. We reject this argument. Where an appellate decision contemplates further proceedings in the trial court, the prevailing party must be determined by who prevails overall in the lawsuit. (*Wood v. Santa Monica Escrow Co.* (2009) 176 Cal.App.4th 802, 806.) Here, the decision in *Elation* contemplated further proceedings in the trial court regarding the apportionment of fees and reconsideration of Elation's motion for a permanent injunction. (*Elation, supra*, 71 Cal.App.5th at p. 968.) That Elation obtained some limited success on appeal did not foreclose the trial court's later determination on remand that respondents were the ultimate prevailing parties entitled to their appellate attorney fees.

Elation next contends that respondents were not entitled to their appellate and postjudgment attorney fees because the trial court

25

"conditioned" the fee award on a "properly filed" memorandum of costs, which respondents never filed. Again, we disagree. Respondents sought (and obtained) such fees pursuant to a noticed fee motion; they were not additionally required to file a memorandum of costs. (*Kaufman v. Diskeeper Corp.* (2014) 229 Cal.App.4th 1, 11.) Although the trial court had instructed respondents to file a memorandum of costs and characterized the fee award as "part of" the recoverable costs, the court's remarks are not reasonably viewed as conditioning the award of attorney fees on the filing of a cost memorandum; indeed, the amended judgment included the court's award of $850,000 in fees to respondents, i.e., the original $700,000 fee award plus $150,000 for appellate and postjudgment fees.

Finally, Elation argues the trial court abused its discretion because only those fees related to the claim for breach of the Settlement Agreement were compensable. Not so. There were three main issues (with various subarguments) raised in the prior appeal: (1) whether the court erred in granting JNOV on the breach of Settlement Agreement claim; (2) whether the trial court erred in granting JNOV on the breach of NDA claim; and (3) whether the court erred in awarding section 1717 fees. Elation acknowledges, and we agree, that attorney time on the first issue was compensable because it related to the breach of Settlement Agreement claim. The third issue was a compensable matter because an award of reasonable attorney fees includes compensation for hours reasonably expended to establish and defend the fee claim. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141.) The second issue, though related to a noncontract claim, was a compensable matter for the reasons discussed above—namely, the issues of liability and relief related to the NDA claim were so closely intertwined with Elation's efforts to obtain entry and enforcement of the Stipulated Injunction

26

that apportionment of fees between the claims was impracticable, if not impossible.

## DISPOSITION

The amended judgment is reversed in part, and the matter is remanded for apportionment of attorney fees incurred on respondents' fraud cross-claims.  In all other respects, the amended judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


_____
Fujisaki, J.


WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.


*Elation Systems v. Fenn Bridge* (A165762)